550 A.2d 616

Laurel Mobile Health Services, Ltd., Petitioner *v.* Commonwealth of Pennsylvania, Department of Health, Respondent.

Aliquippa Hospital, Petitioner *v.* Commonwealth of Pennsylvania, Department of Health, Respondent.

Argued February 25, 1988, before Judges CRAIG, MCGINLEY and SMITH, sitting as a panel of three.

*Reed Hamilton,* with him, *Kathleen Herzog Larkin* and *Jan L. Weinstock, Blank, Rome, Comisky & McCauley,* for petitioner, Laurel Mobile Health Services, Ltd.

*Edward F. Shay,* with him, *Claire C. Obade* and *Stanley J. Milavec, Jr.,* for petitioner, Aliquippa Hospital et al.

*Darius G. C. Moss,* Assistant Counsel, for respondent.

OPINION BY JUDGE MCGINLEY, November 25, 1988:

Laurel Mobile Health Services, Ltd., (Laurel) appeals from an Opinion and Order of the Pennsylvania Department of Health (Department) dated June 9, 1987, dismissing Laurel's appeal from a determination of the Division of Need Review (DNR) of the Department which held that Aliquippa Hospital did not require a Certificate of Need (CON) to acquire a computerized tomography scanner (CT scanner). On July 21, 1987, Aliquippa Hospital (Aliquippa) filed a Cross-petition for Review from the same order. Aliquippa and Aliquippa CT Associates (Associates) intervened in Laurel's appeal on July 29, 1987, and on August 21, 1987, Laurel intervened in Aliquippa's Cross-petition. On August 21, 1987, Laurel also filed a Motion to Quash Aliquippa's Cross-petition. On September 8,

1987, this Court denied Laurel's Motion to Quash and on October 27, 1987, *sua sponte,* consolidated both cases.

Incidents giving rise to this appeal commenced on September 2, 1983, when the Department simultaneously issued a CON to Aliquippa, Ohio Valley Hospital and Mobile Imaging based upon a joint application. The CON authorized Mobile Imaging to acquire a mobile CT scanner and to provide CT scanning services on a shared basis to the two hospitals pursuant to a contract between Aliquippa, Ohio Valley Hospital and Mobile Imaging. Shortly after the CON for the shared arrangement was approved, Mobile Imaging assigned its contract to Laurel. The contract with the hospitals was effective through January 31, 1987. (R. at 124.)

On July 17, 1986, Aliquippa wrote to the Department stating its intent to acquire a CT scanner of its own for its sole use. (Original Record (R.) at 1.) Laurel objected to that request by letter dated August 14, 1986.[1] On October 3, 1986, Aliquippa wrote to the DNR of the Department informing it that at the conclusion of its present contract with Laurel, Aliquippa together with Associates would provide the CT scanner service.[2] The Department concluded that Aliquippa

---

[1] This letter is not a part of the Original Record, but, Aliquippa acknowledges it in its Motion to Quash (R. at 50) and its Brief at 27-28 as does the Department in its Brief at 14. Laurel did include this letter as part of their "Certified Record" submitted by Laurel to this Court.

[2] Aliquippa also stated in this letter that it did not anticipate any capital expenditure and that since renovation requirements would be minor, it did not consider this project as requiring review by the Health Systems Agency. It stated, "Please accept this letter as a notification of change in contractural agreement." (R. at 8.) Aliquippa notified the Department of this change, but there is no evidence of record that it notified Laurel, a party to the contract. (R. at 8.)

could acquire the CT scanner without first obtaining a CON for the new arrangement. Such a decision of the Department is termed a "Determination of Non-Reviewability." The Department approved the proposal on October 8, 1986.[3] On October 16, 1986, Laurel requested that a hearing be held to contest the Department's determination.[4] The request was supplemented by a second letter from Laurel dated November 3, 1986. (R. at 12-15.) On December 2, 1986, Aliquippa was formally advised by the Department's legal counsel of Laurel's appeal pursuant to 1 Pa. Code §35.20 and of its opportunity to file an answer pursuant to 1 Pa. Code §§31-35. (R. at 16-17.) Aliquippa did not. On January 5, 1987, the Department notified Aliquippa that pursuant to Section 603(e) of the Health Care Facilities Act (Act), Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. §§448.101-448.904, no further activity related to the scanning equipment should be undertaken until a final determination was made by the Secretary of the Department. (R. at 20-21.) On January 13, 1987, the Department notified Laurel and Aliquippa of an eviden-

---

[3] DNR stated in this letter that the project did not require CON review because it would not result in the addition of a new health service and the capital costs associated with the project would not exceed $760,495. DNR sent a copy of this correspondence to Robert C. Aul, President of Laurel, yet the Department now argues Laurel did not participate in the DNR proceeding. (R. at 9-10.)

[4] Mr. Aul, President of Laurel, informed the department by letter that Laurel relied upon the oral advice of Carol B. Longwell, Esquire, the Department's Assistant Counsel, in filing its Petition pursuant to the General Rules of Administrative Practice and Procedure, 1 Pa. Code (Code) §§31.1-35.251, specifically 1 Pa. Code §35.20, and that the substance of Laurel's Petition was that the new CT scanner applied for would cost well in excess of the threshold limit authorized under 28 Pa. Code §401.3. This threshold limit was changed from $400,000 to $760,495 in 1984. *C* 14 Pa. B. 1294, 1999, 1301 (1984).

tiary hearing to be held on February 10, 1987, pursuant to the provisions of the Code and the Administrative Agency Law (Law), 2 Pa. C. S. §§501-508, 501-704 (R. at 30-37.)

On January 28, 1987, Aliquippa and Associates filed a Motion to Quash (R. at 81-91) and a Motion to Strike (R. at 58-79) alleging that Laurel lacked standing to contest the Department's determination. The hearing was postponed and Laurel filed an answer to the Motions on February 16, 1987. (R. at 81-91.) On June 9, 1987, the Secretary of the Department dismissed Laurel's appeal without hearing based upon the following Findings of Fact and Conclusions of Law:

1. Laurel Mobile Health Services is not a person whose application is being reviewed, is not a health care facility or a health maintenance organization, and is not a member of the public to be served by a new institutional health service.

2. Laurel Mobile Health Services did not appear before the Department during the Department's review, and did not file a petition to intervene.

3. Laurel Mobile Health Services did not participate as a party or an applicant before the Department.

4. Laurel Mobile Health Services is not a directly affected person.

5. Only directly affected persons may be a party to a proceeding under the Health Care Facilities Act.

6. The determination by the Department which is in question is a proceeding under the Health Care Facilities Act.

7. Only persons who have appeared before an agency in a proceeding may have standing as a party under the Administrative Agency Law.

8. Laurel Mobile Health Services did not appear before the Department; therefore, Laurel is not a party under the Administrative Agency Law.

Memorandum Opinion and Order, R. at 100-104. Laurel thereafter filed this appeal.

Several arguments are set forth.[5] We address only one, that the Department's decision violates the Act in that Aliquippa should have proceeded via an amendment to the CON.

Our scope of review is limited to a determination of whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

The Department's grant of a "determination of non-reviewability" violates the Act. A CON can be granted only if the Department finds that the proposed activity is needed. Section 603(a)(1) of the Act, 35 P.S. §448.603(a)(1). In reaching its decision the Department is statutorily mandated to examine the twenty criteria for need delineated by the Legislature in the Act at Section 707(a)(1)-(20), 35 P.S. §448.707(a)(1)-(20). Among those criteria which the Department must ex-

---

[5] Laurel sets forth four arguments on appeal: a "decision of non-reviewability" is not subject to the Act; Laurel has standing to challenge the Department's "determination of non-reviewability;" Laurel was a party to the proceeding involving the "determination of non-reviewability;" and lastly, that the Department's decision violates the Act in that Aliquippa should have proceeded via an amendment to the CON.

Aliquippa argues Laurel was never a party to the DNR proceeding; Laurel lacks standing to challenge the Department's determination; and, that Laurel has waived several of its arguments.

The Department maintains that the only issue in this appeal is a fundamental question of Laurel's standing.

amine is the need of the population to be served by the health care service, Section 707(a)(3), 35 P.S. §448-.707(a)(3); whether there is an appropriate, less costly or more effective alternative method of providing the service, Section 707(a)(4), 35 P.S. §448.707(a)(4); whether the service is economically feasible, considering the anticipated volume of care, Section 707(a)(5), 35 P.S. §448.707(a)(5); whether the proposed service is compatible with the existing health care system in the area, Section 707(a)(7), 35 P.S. §448.707(a)(7); the appropriateness of using existing services and facilities similar to those proposed by the hospital, Section 707(a)(17), 35 P.S. §448.707(a)(17).

The Act also provides that: "An application for a certificate of need shall be recommended, approved and issued when the application substantially meets the requirements listed below: provided that each decision . . . shall be consistent with the State health plan. . . ." Section 448.707(a) of the Act.

The record evinces that none of these criteria were reviewed by the Department. Under the State Health Plan conversion from a shared mobile CT system constitutes a change or amendment to the original approval requiring additional CON review which required the Department to make specific findings regarding the remaining systems.[6]

---

[6] The State Health Plan recommends:

Recommended Action 27.8.2.7: Where a shared gantry system is purchased, the Department should count this as a single system. However, conversion of any remote gantry to independent status should then be considered as a change or amendment to the original CON approval and so would be reviewable under CON;

Recommended Action 27.8.2.8: When reviewing a CON application in which a facility participating in a mobile or shared gantry CT scanner system wishes to acquire an independent unit, the Department should require the facili-

The Act further provides that any "person" desiring to amend a CON "shall apply to the local Health Systems Agency (HSA) and to the Department simultaneously." Section 702(b) of the Act, 35 P.S. §448.702(b). Notice of applications for amending CONs are to be published by the HSA and by the Department. By ignoring the Amendment procedure Aliquippa made intervention virtually impossible until it received a copy of the Department's October 8, 1986, letter to Aliquippa. (R. at 9.) By treating Aliquippa's letter as an independent project, unrelated to the CON issued in 1983 authorizing a shared scanner, the Department allowed Aliquippa to bypass the statutory requirements. As noted Aliquippa failed to give notice to HSA, thus depriving HSA of an opportunity to evaluate the need for a changeover from one scanner to two independent scanners. Although the record reflects the Department reviewed the material submitted to it by Laurel,[7] the record is devoid of any findings on the utilization of the independent scanner and also devoid of any challenges to Aliquippa's assertion that its capital expenditures would be so minimal as to entitle it to a "determination of non-reviewability." We find that Aliquippa should have proceeded via an amendment to the original CON according to the Act.

---

ty to show that the shared system will continue to operate at the minimum specified . . . The applicant should also be required to show that the remaining system or all of the then independent CT units would continue to be financially feasible after the applicant facility has left the shared arrangement.

Annual Amendments to the Pennsylvania State Health Plan 1982-1987, May, 1985, pp. 54-55. State Health Planning and Development Agency, Pennsylvania Department of Health.

[7] One day after receiving Aliquippa's letter the Department issued its "determination of non-reviewability." (R. at 9-10.) *See* footnote 3 contained herein.

The record contains the CON issued on September 2, 1983, pursuant to the sharing arrangement between Aliquippa and Ohio Valley Hospital. It states therein that the Department's decision to issue the CON was based on four findings, the fourth being: "The project is a culmination of joint planning to provide CT scanning to both hospitals, neither of which could justify the service on its own." (R. at 111.) Aliquippa attempts now to do what the Department disapproved in 1983, through a "determination of non-reviewability" based only upon the allegation that costs would be under the threshold limit.

The September 2, 1983 CON stated no termination date and the record before us contains only the termination date of the contract between Mobile Imaging, Aliquippa and Ohio Valley Hospital, January 31, 1987. (R. at 124.) The CON however does state that the Department should be notified of any changes in cost or conditions in the original proposal *before* proceeding since our approval is limited to the cost and conditions specified in your proposal . . . Changes in cost or conditions may require a new review." Aliquippa did not notify the Department of this change in cost or condition but instead sought a "determination of non-reviewability," for its proposed independent unit, yet in its Cross-petition it asks this Court to ignore the assignment of Mobile Imaging to Laurel on the same grounds.

Finally, because the Department did not rule on Aliquippa's argument that Laurel was not a proper successor to the CON issued to Mobile Imaging and therefore lacked standing to contest the determination that Aliquippa could acquire its own CT scanner without additional CON approval Aliquippa has filed a cross-petition. Laurel intervened. Aliquippa argues that Laurel has no CON because the Act does not permit an

assignment of a CON without the Department's written approval.[8]

On September 2, 1983, the Department granted Mobile Imaging a CON to contract for the acquisition of a mobile CT scanner to provide CT services to the Aliquippa and Ohio Valley hospitals pursuant to separate contracts entered into by the parties. 28 Pa. Code §401.5(1) sets forth requirements for changes to CONs and the CON approval letter stated also that "any change in *cost or conditions* in the original proposal will require written notification to the Department before proceeding since an approval is limited to *cost and conditions* in your proposal." (Emphasis added.) (R. at 73.) There were no changes in cost under 28 Pa. Code §401.5(k) and the transfer of the rights established by the CON from Mobile Imaging to Laurel did not constitute a change in conditions pursuant to 28 Pa. Code §401.5(1).[9]

Even if Laurel were required to obtain approval from the Department for the transfer of the CON Aliquippa did not object at the time of the transfer and should not be permitted to challenge its legality after it has reaped the benefits of the arrangement. Aliquippa never asserted the illegality or impropriety of the assignment of contracts, but instead accepted and paid for the CT services provided by Laurel without objection. Having accepted the benefits Aliquippa is now es-

---

[8] Aliquippa also argues in its Cross-petition that Laurel never informed the Department of the assignment of the contract from Mobile Imaging to Laurel. In a letter dated March 6, 1986, from Laurel to the Department, contained in the Record at 175, Laurel informed the Department of the assignment.

[9] Under this section changes in conditions include such things as a change in site, the addition or deletion of a service, a change in the capacity, or a change in construction footage. 28 Pa. Code §401.5(1)(3)-(5).

topped from asserting that the arrangement was prohibited. *Blackwood Coal Co. v. Deister Concentrator Co.*, 626 F. Supp. 7272 (E.D. Pa. 1985). [10] Aliquippa's Cross-Petition for Review is hereby dismissed.

Accordingly, we reverse the decision of the Department and order Aliquippa to proceed via an amendment to the original CON.

### ORDER

AND NOW, November 25, 1988, the appeal at No. 1577 C.D. 1987, is sustained and the order of the Pennsylvania Department of Health dated June 9, 1987, Docket No. NR-86-016, is hereby reversed. The parties are hereby ordered to proceed in accordance with the accompanying opinion. The Cross-Petition at No. 1738 C.D. 1987 is hereby dismissed.

Jurisdiction relinquished.

Judge SMITH concurs in the result only.

Judge MACPHAIL did not participate in the decision in this case.

---

[10] In this case Blackwood Coal Company (Blackwood) had acquired equipment manufactured and sold by the defendant. When Blackwood filed a contract action for breach of warranty, the defendant company contended that Blackwood lacked standing to assert the warranty claim because Blackwood did not exist at the time the purchase contract was originally entered. The original party to that purchase contract had assigned its contract rights to Blackwood, a newly created corporation. Blackwood then acquired the equipment from the defendant pursuant to that contract. The Court ruled that the defendant was estopped from challenging Blackwood's standing because the defendant had delivered the equipment to Blackwood and accepted payment from Blackwood without objection. Having honored the contractual arrangement with Blackwood, it could not deny its validity.