**WEST AMERICAN INSURANCE COMPANY, Appellee,**

v.

**PARK, Suzanne**

**Suzanne Park, Appellant.**

**No. 90–1490.**

United States Court of Appeals, Third Circuit.

Argued Jan. 11, 1991.

Decided May 29, 1991.

William J. Campanale (argued), Morton A. Slifkin, Slifkin & Axe, Philadelphia, Pa., for appellant.

William R. Hourican (argued), Margaret E. Wenke, Manta & Welge, Philadelphia, Pa., for appellee.

Morris M. Shuster, William D. Marvin, Shuster and Marvin, Bala Cynwyd, Pa., for amicus curiae Amy Chartan.

Henry H. Jassen, Tanya M. Sweet, Michael G. Sabo, Rapp, White, Jassen & German, Ltd., Philadelphia, Pa., for amicus curiae Sea Ins. Co., Ltd.

Before STAPLETON, GREENBERG and SEITZ, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge.

In this diversity of citizenship, declaratory judgment action, appellee-plaintiff West American Insurance Company asks us to predict that the Supreme Court of Pennsylvania would not enforce the terms of a policy that West American wrote for appellant-defendant Suzanne Park. West American argues that section 1736 of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.Cons.Stat. Ann. § 1736 (Purdon supp. 1990), prohibits the aggregation or "stacking"[1] of uninsured/underinsured motorist coverage to exceed the liability coverage carried by the insured, a proposition upon which Pennsylvania courts have not authoritatively ruled. On cross-motions for summary judgment, the district court determined that the Supreme Court of Pennsylvania would so hold and entered judgment for West American. The district courts that have considered the issue are split.[2] Because we conclude that the Supreme Court of Pennsylvania would find West American estopped from challenging the legality of its own policy, we will reverse without considering whether the policy does in fact violate the MVFRL.

## I.

### Factual Background and Contentions of the Parties

The following facts have been stipulated. On June 3, 1988, Suzanne Park was operating her husband's 1986 Mercury Topaz automobile when she was allegedly injured by an uninsured motorist. At that time the Mercury was insured under a West American policy which also covered her husband's 1983 Ford Escort. The policy had a limit of coverage for liability to third persons of $100,000 and also provided uninsured/underinsured motorist coverage of $100,000 for each vehicle. West American charged separate premiums for the uninsured/underinsured motorist coverage for each automobile.

After the accident, Suzanne Park initiated a claim against West American for uninsured motorist benefits. On February 22, 1990, West American, a California corporation with its principal place of business in California, commenced this action in the district court seeking a declaratory judgment against Park, a citizen of Pennsylvania, as to the limits of uninsured motorist coverage under the policy.

Park claims that she may stack the $100,000 worth of uninsured motorist coverage

---

**1.** "Stacking is where a claimant adds all available policies together to create a greater pool in order to satisfy his actual damages." 12A *Couch on Insurance 2d* § 45:651 at 207 (1981). It "permits the total amount of uninsured motorist coverage provided for all vehicles listed in an insurance policy to be applied to the damages resulting from an accident involving only one of the vehicles." *Rhody v. State Farm Mut. Ins. Co.,* 771 F.2d 1416, 1418 (10th Cir.1985).

**2.** *Compare Chartan v. Chubb Corp.,* 725 F.Supp. 849 (E.D.Pa.1989), *reconsideration denied,* 759 F.Supp. 1125 (E.D.Pa.1990) (stacking of uninsured motorist benefits in excess of liability coverage prohibited by section 1736); *West American Ins. Co. v. Park,* 1990 WESTLAW 87284 (U.S.D.C., E.D.Pa. June 18, 1990) (same), *with West American Ins. Co. v. Antoniolo,* 1990 WESTLAW 143072 (U.S.D.C., E.D.Pa. Oct. 1, 1990) (stacking of uninsured motorist benefits in excess of liability coverage permitted under section 1736); *Byers v. Amerisure Ins. Co.,* 745 F.Supp. 1073 (E.D.Pa.1990) (same); *Maryland Cas. Co. v. Fitze,* 744 F.Supp. 628 (M.D.Pa.1990) (same); *North River Ins. Co. v. Tabor,* 744 F.Supp. 625 (M.D.Pa.1990) (same).

provided for each of the vehicles so that she may potentially recover up to $200,000 of uninsured motorist coverage benefits. West American asserts that section 1736 of the MVFRL prevents Park from stacking the uninsured motorist coverage benefits to exceed the maximum amount available to third parties under the liability portion of the policy, *i.e.*, $100,000. Section 1736 states that:

> The [uninsured/underinsured motorist] coverages provided under this subchapter may be offered by insurers in amounts higher than those required by this chapter but may not be greater than the limits of liability specified in the bodily injury liability provisions of the insured's policy.

75 Pa.Cons.Stat.Ann. § 1736 (Purdon supp. 1990). West American contends that although stacking is authorized by the policy, "[i]n instances such as this case in which [the] stacking allowed by a policy would run afoul of the express statutory limitation of [section] 1736, the public policy behind the statute must prevail." Appellee's Brief at 17. Two intermediate Pennsylvania courts have indicated that section 1736 is intended to prevent

> an insured from providing greater coverage, via uninsured/underinsured coverages, for himself and his additional insureds than the amount of coverage he provides for others injured through his negligence.

*Tallman v. Aetna Cas. & Sur. Co.*, 372 Pa.Super. 593, 539 A.2d 1354, 1358–59 *allocatur denied*, 520 Pa. 607, 553 A.2d 969 (1988) (quoting *Wolgemuth v. Hurleysville Mut. Ins. Co.*, 370 Pa.Super. 51, 535 A.2d 1145, 1147 n. 3, *allocatur denied*, 520 Pa. 590, 551 A.2d 216 (1988)). The district court agreed with West American, and this appeal followed.

## II.

### *Subject Matter Jurisdiction and Standard of Review*

■ West American and Park are citizens of different states and the amount in controversy exceeds $50,000. Thus, the district court had subject matter jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 2201(a), and we have jurisdiction under 28 U.S.C. § 1291. Federal court jurisdiction exists even though the ultimate resolution of the dispute will come only in an arbitration proceeding to determine Park's damages. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–43, 57 S.Ct. 461, 463–65, 81 L.Ed. 617 (1937); *Myers v. State Farm Ins. Co.*, 842 F.2d 705, 708 (3d Cir.1988) (under Pennsylvania law, legal question of coverage properly decided by court before question of liability within that coverage is decided at arbitration). *See also McNeese v. Board of Education for Community School Dist. 187*, 373 U.S. 668, 673 n. 5, 83 S.Ct. 1433, 1436, n. 5, 10 L.Ed.2d 622 (1963); *Baltimore Bank for Cooperatives v. Farmers Cheese Cooperative*, 583 F.2d 104, 111 (3d Cir.1978). As the cross-motions for summary judgment were submitted on stipulated facts, only issues of state law remained for the district court to resolve and the standard of our review is plenary. *Salve Regina College v. Russell*, — U.S. —, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); *Compagnie Des Bauxites v. Insurance Co. of America*, 724 F.2d 369, 371 (3d Cir.1983).

## III.

### *Discussion*

■ West American claims that Park should be denied recovery on public policy grounds because section 1736 prohibitions insurers from offering uninsured/underinsured motorist coverage in excess of liability coverage. In other words, West American claims that it should be excused from fulfilling Park's reasonable expectations and its own obligations under the policy's plain language, because it violated the MVFRL.[3] Assuming that West American did violate the MVFRL, as it contends, we

---

**3.** Pennsylvania Insurance Guideline C–2 requires that West American "make it clear in [its] policies that an insured ... may add together the limits of uninsured motorist coverage for multiple vehicles covered under the insured's policy[.]" But this guideline did not require

conclude that the courts of Pennsylvania would find it estopped from denying the existence of uninsured motorist coverage it in fact issued.

Pennsylvania insurance law incorporates principles of equitable estoppel. As one Pennsylvania court expressed it,

> Reduced to its essence, equitable estoppel is a doctrine of fundamental fairness intended to preclude a party from depriving another of a reasonable expectation, when the party inducing the expectation knew or should have known that the other would rely to his detriment upon that conduct.

*Straup v. Times Herald,* 283 Pa.Super. 58, 423 A.2d 713, 720 (1980). As the Supreme Court of Pennsylvania has cogently put it:

> [t]he reasonable expectation of the insured is the focal point of the insurance transaction.... Courts should be concerned with assuring that the insurance public's reasonable expectations are fulfilled. Thus, regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents ... the public has a right to expect that they will receive something of value in return for the premium paid.

*Collister v. Nationwide Life Ins. Co.,* 479 Pa. 579, 388 A.2d 1346, 1353 (1978), *cert. denied,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979).[4]

In the *Collister* case, a life insurance applicant died after he sent in an application for life insurance and the first premium, but before the insurer had accepted or rejected the application. Disregarding plain language in the application that made coverage conditional on insurer receiving a completed medical exam, the Pennsylvania Supreme Court concluded that the reasonable expectations of the insured, specifically the expectation that he would receive something upon paying the first premium, controlled. It held that those expectations created a temporary insurance contract until the insurer either accepted or rejected the application. In essence, the principles of equitable estoppel were used to bar the insurer from both accepting the first premium and denying that coverage existed.

Collister and subsequent insurance cases expand traditional notions of equitable estoppel so that the insurer is bound not only by the expectations that it creates, but also by any other reasonable expectation of the insured. The insured's reasonable expectations control, even if they are contrary to the explicit terms of the policy. *State Farm Mut. Auto Ins. Co. v. Williams,* 481 Pa. 130, 392 A.2d 281, 286–87 (1978). If the insurer wishes to change the reasonable expectations of the insured, it must do more than insert the condition in the policy. *Tonkovic v. State Farm Mut. Auto Ins. Co.,* 513 Pa. 445, 521 A.2d 920, 925 (1987).

Thus, the Supreme Court of Pennsylvania has consistently applied equitable estoppel to prevent an insurer from attempting to frustrate the reasonable expectations of the insured. We predict that it would apply that doctrine to achieve that objective in context of the facts of this case, even though the result may be to provide Park with more underinsured motorist protection than the legislature intended her to have, i.e., more underinsured motorist protection than the liability protection for which she had contracted. The Pennsylvania courts on more than one occasion have applied equitable estoppel to bar arguments supported by legislatively established public policy.

---

West American to violate section 1736 as West American construes it. West American could have complied with the guideline and with its own interpretation of the MVFRL either by requiring Park to purchase $200,000 of liability coverage or by selling her only uninsured coverage in an amount that, when stacked, would equal her liability coverage.

**4.** This rationale also underlies Pennsylvania courts' preference for stacking (even under policies which *expressly prohibit* stacking):

> the intended beneficiary of an uninsured motorist policy is entitled to multiple coverage when multiple premiums have been paid. [This] rationale is grounded in the belief that a person has reasonable expectations when he pays separate premiums that he has obtained coverage under separate policies, and therefore is entitled to benefits under each.

*Utica Mut. Ins. Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005, 1010 (1984) (citation omitted).

In *Fraternal Order of Police, E.B. Jermyn Lodge #2 v. Hickey,* 499 Pa. 194, 452 A.2d 1005 (1982) (plurality), the Supreme Court found that the City of Scranton and its officers were estopped from claiming that a provision of its collective bargaining agreement with its policemen was illegal. The plurality applied equitable estoppel noting that the City had theretofore received the benefit of the agreement:

> the statutorily mandated obligation to bargain in good faith is not met by permitting the governmental employer to avoid the performance of a term by questioning its legality after having received the advantages that flowed from that term's acceptance.

452 A.2d at 1007–08. *See also Scranton v. Local Union No. 669,* 122 Pa.Cmwlth. 140, 551 A.2d 643, 646 (1988) ("where an employer *voluntarily* agrees to perform an act … it cannot later contend that the act is illegal and refuse to perform it; indeed it will be estopped from doing so.")

More recently, Pennsylvania's Commonwealth Court has applied equitable estoppel to bar a party from asserting that the position advocated by its opponent would violate the Health Care Facilities Act. In *Laurel Mobile H. Serv. v. Health Department,* 121 Pa.Cmwlth. 291, 550 A.2d 616 (1988), one health care provider attempted to argue that another provider was violating the Act by providing CT scanning services without proper state authorization. The court held that the first provider was estopped to so argue because it had benefitted from receiving CT services under the same arrangement it now sought to challenge:

> [The hospital] never asserted the illegality or impropriety of the assignment of contracts, but instead accepted and paid for the [medical] services provided by the Laurel without objection. Having accepted the benefits, [the hospital] is now estopped from asserting that the arrangement was prohibited.

550 A.2d at 620–21.

We conclude that the courts of Pennsylvania would find this case a far more compelling one for application of the doctrine of equitable estoppel than *Hickey* or *Laurel Mobile.* West American wrote the policy that it now seeks to challenge and received premiums for the coverage it now tries to contest. Moreover, the Pennsylvania legislature has determined that the most effective means of securing the desired objective of this portion of the MVFRL is to impose a duty on all *insurers not to issue* uninsured/underinsured coverage above a prescribed amount. We would expect a Pennsylvania court fashioning an equitable remedy in a situation of this kind to take note of that legislative decision and to choose a result that will not reward an insurer for violating what the insurer claims to be the proper interpretation of § 1736.

## IV.

### Conclusion

Pennsylvania law will not allow an insurer to use the explicit language of an insurance policy to defeat the reasonable expectations of the insured. West American seeks to use a provision of Pennsylvania law, prohibiting certain conduct by *insurers,* to defeat both the reasonable expectations of the insured and the explicit terms of the policy it wrote. We are confident that the Pennsylvania Supreme Court would not allow an insurer to challenge the legality of a policy which it wrote, for which it collected premiums, and on which it gave the insured every reason to rely. Accordingly, we will reverse the order of June 19, 1990, of the district court and remand with instructions to enter a judgment declaring that West American is responsible for such damages as Park can establish up to a limit of $200,000.

GREENBERG, Circuit Judge, concurring:

I do not disagree with the conclusion of the majority that West American is estopped from challenging the legality of its policy. I would, however, go further and hold that section 1736 of the MVFRL was not violated here and thus the stacking should be allowed as provided in the poli-

cy.[1] Section 1736, a part of MVFRL's subsection C which deals with uninsured/underinsured motorist coverage, provides:

**Coverages in excess of required amounts**

The coverages provided under this subchapter may be offered by insurers in amounts higher than those required by this chapter but may not be greater than the limits of liability specified in the bodily injury liability provisions of the insured's policy.

75 Pa.Cons.Stat.Ann. § 1736 (Purdon supp. 1990).

As explained by a district court in another case in which the question now before us was presented:

Section 1736 allows only two possibilities. The first is that one may obtain uninsured coverage and recover in an amount equal to the liability coverage the insured has provided for others. The second is that one may obtain uninsured coverage in an amount equal to one's liability coverage and then may recover that amount multiplied by the number of cars he owns and insures.

*Chartan v. Chubb Corp.*, 725 F.Supp. 849, 854 (E.D.Pa.1989). Under the first view, section 1736 is a limit on the total uninsured motorist coverage that an *insured* may provide for herself through an insurance policy *and* stacking; under the second view, section 1736 is merely a limit on the amounts of coverage an *insurer* may offer in a policy per vehicle, leaving the insured's ability to stack untouched. Although the Supreme Court of Pennsylvania has yet to declare which of these views is correct, as the majority notes two intermediate appellate courts of Pennsylvania have indicated that section 1736 is intended to prevent " 'an insured from providing greater coverage, via uninsured/underinsured coverages, for himself and his additional insureds than the amount of coverage he provides for others injured through his negligence.' " *Tallman v. Aetna Cas. & Sur. Co.*, 372 Pa.Super. 593, 602, 539 A.2d 1354, 1358–59, *allocatur denied*, 520 Pa. 607, 553 A.2d 969 (1988) (quoting *Wolgemuth v. Harleysville Mut. Ins. Co.*, 370 Pa.Super. 51, 55 n. 3, 535 A.2d 1145, 1147 n. 3, *allocatur denied*, 520 Pa. 590, 551 A.2d 216 (1988)).

Whatever alleged demerits there may be to permitting the stacking of uninsured motorist coverage,[2] it is clear that Pennsylvania has been, and remains, fully in favor of it in at least some situations. While West America does not deny that stacking is permitted provided that the stacked amount does not exceed the liability coverage available to third parties, I nevertheless address the basic stacking cases as they reflect an approach informing my ultimate conclusion.

In *Harleysville Mut. Cas. Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968), the Supreme Court of Pennsylvania approved stacking under the then-governing statute, the Uninsured Motorist Act, holding "that where the loss exceeds the limits of one policy, the insured may proceed under other available policies up to their individual limits or to the amount of the actual loss." *Id.* at 395–96, 241 A.2d at 115. Declaring that "[t]he purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers," *id.* at 395, 241 A.2d at 115, and that the uninsured motorist statute was "designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others," *id.* (internal quotations omitted), the court found that stacking was commensurate with the liberal construction to which such a remedial statute is entitled, *id.* Accord-

---

1. This conclusion may not be merely theoretical as it is possible that the basis for estoppel may not exist in another case.

2. *See generally, e.g.,* J. Appleman, 8C *Insurance Law & Practice* § 5106, "Thou Shalt Not Stack" (1981), arguing that, where in a given situation there is to be more than one driver and several vehicles, the more vehicles there are the greater the risk that one of them will be in an accident; and that charging multiple premiums for multiple vehicles is therefore fair, whereas stacking is an unfair windfall to insureds.

ingly, the *Blumling* court allowed the insured to stack his uninsured motorist coverage on top of the uninsured motorist coverage carried by his employer for the vehicle in which the insured had been injured.

The court noted that while the uninsured motorist statute did not impose a ceiling on uninsured motorist coverage, it did impose a floor on the coverage that all insureds had to be offered by insurers, the right to which could only be waived by the insured in writing. *Id.* The court therefore refused to enforce a clause in the insured's personal policy purporting to require him to seek recovery from "other insurance," if any, before claiming uninsured motorist benefits from his policy with Harleysville Mutual Casualty. The court said: "Appellee has received its premium attributable to this coverage, which coverage the Act of Assembly requires it to furnish. We will not permit it to avoid its statutorily imposed liability by its unilateral insertion into the policy of a liability limiting clause repugnant to the statute." *Id.* at 396, 241 A.2d at 115–16.

In *State Farm Mut. Auto Ins. Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978), stacking was carried a bit further. There, the insured, who owned and insured his own vehicle, was injured while driving his wife's car. Despite a clause in his own policy purporting to exclude coverage if the insured was injured in a vehicle owned by a resident of the insured's household, the court allowed the insured to stack the uninsured motorist benefits from that policy on top of those from his wife's policy. The court found that the rationale in *Blumling* regarding the repugnancy of the "other insurance" clause involved there was just as applicable to the "household" exclusion in *Williams*. *Id.* at 143, 392 A.2d at 287. In sum, *Williams* held that the insured

may recover uninsured motorists benefits "[i]f the injured party paid the premiums of the policy and was the named insured...." *Id.*[3]

The holding in *Williams* was, in turn, considerably expanded in *Utica Mut. Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984). In *Contrisciane* an employee was killed while occupying one of his employer's cars which, together with 14 other vehicles, was insured under a fleet policy issued by Utica Mutual Insurance Company. Though the deceased employee paid no insurance premiums, he was the designated driver on one of three cars his father insured under a policy issued by Aetna Casualty and Surety Company. The deceased's estate sought to stack the uninsured motorist benefits of the 15 cars under the Utica Mutual fleet policy, and add to that the stacked uninsured motorist coverage for the three cars under the Aetna policy. In discussing the stacking issue, the court first dismissed the reliance of Utica Mutual and Aetna on clauses in their respective policies purporting to limit their liability. The court said that the "clear import" of *Blumling* and *Williams* "is that *any* attempt by the insurer to diminish the statutorily mandated floor of minimum protection provided by the Uninsured Motorist Act, will be considered void as being repugnant to, and in derogation of, the purpose of that act." *Id.* at 337, 473 A.2d at 1010 (emphasis added).

The *Contrisciane* court then held that Contrisciane's estate *could* stack coverage under his father's policy, but could *not* stack coverage under his employer's fleet policy. As to the latter, the court looked to the language of the Utica Mutual policy which defined insureds thereunder as:

(a) the named insured and any designated insured and, while residents of the

---

**3.** The Court added: "and

2. If the recovery under the second uninsured motorist coverage was limited to actual damages; and

3. If the recovery is not limited by the statutory exclusions." 481 Pa. at 143, 392 A.2d at 287. The statutory exclusions from mandatory inclusion of uninsured motorist protection, as noted by *Williams*, were policies covering vehicles designed for freight handling or certified as passenger conveyors, and policies covering owner/operators of such vehicles whose employees were covered by Workers' Compensation. *Id.* at 139, 392 A.2d at 285. No statutory exclusions are applicable to this case and Park does not seek to recover benefits in excess of her damages.

same household, the spouse and relatives of either,

(b) any other person while occupying an insured highway vehicle; and

(c) any person with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.

*Id.* at 338, 473 A.2d at 1010.

The court respectively characterized these three groups as "class one," "class two," and "class three" insureds and said that Contrisciane was a "class two" insured under the employer's fleet policy. Of significance to the problem in this case, the court explicitly enunciated the policies behind stacking, saying:

The basis upon which our Court has justified stacking is twofold: first, it furthers the policies sought to be accomplished by the act; and second, that the intended beneficiary of an uninsured motorist policy is entitled to multiple coverage when multiple premiums have been paid. *See Harleysville v. Blumling....* The latter rationale is grounded in the belief that a person has reasonable expectations when he pays separate premiums that he has obtained coverage under separate policies, and therefore is entitled to benefits under each.

*Id.*

Using these policy concerns as its starting point, then, the court found that Contrisciane, as a "class two" insured, was a person who had come under the coverage of his employer's policy merely by occupying a vehicle, and therefore was not entitled to stack coverage under the employer's fleet policy: "A claimant whose coverage is solely a result of membership in this class

has not paid premiums, nor is he a specially intended beneficiary of the policy. Thus, he has no recognizable contractual relationship with the insurer, and there is no basis upon which he can reasonably expect multiple coverage." *Id.* at 338–39, 473 A.2d at 1010–11.[4]

The *Contrisciane* court, however, extended the right to stack on the father's policy beyond the *Williams* court's restriction of stacking to where "the injured party paid the premiums of the policy and was the named insured...." *Williams,* 481 Pa. at 143, 392 A.2d at 287. The court noted that Contrisciane was a designated driver of one of the three cars insured under the Aetna policy, and was the son of the insured and resided in his household. *Contrisciane,* 504 Pa. at 339, 473 A.2d at 1011. It then indicated that as the Aetna policy defined class one insureds as "the named insured and any relative," *id.* at 341, 473 A.2d at 1012, Contrisciane, as a specifically intended beneficiary of his father's policy, was entitled to stack its uninsured motorist coverage. *Id.* at 340, 473 A.2d at 1011–12. Thus, while *Contrisciane* refused to recognize stacking as to fleet policies, it extended stacking beyond insureds who had paid premiums to include the "specifically intended beneficiary" of a policy.

This clear pro-stacking trend in Pennsylvania's Supreme Court has been paralleled in the Superior Court. *See Sones v. Aetna Cas. & Sur. Co.,* 270 Pa.Super. 330, 411 A.2d 552 (1979) (policy provision purporting to prohibit stacking of uninsured motorist coverage was void as in derogation of and repugnant to the Uninsured Motorist Act). *Tallman v. Aetna Cas. & Sur. Co.,* 372 Pa.Super. 593, 539 A.2d 1354, is of particular significance to the problem in this case.[5] There the court, dealing with *underinsu-*

---

**4.** This result was essentially repeated in *Selected Risks Ins. Co. v. Thompson,* 520 Pa. 130, 552 A.2d 1382 (1989), where a fireman sought to stack coverage of the six vehicles owned and operated by the unincorporated volunteer fire department of which he was a member. The court found that the policy issued to the fire department was a fleet policy with no explicit designation of insureds. Accordingly, since the fireman, as a "class two" insured, was not a specifically intended beneficiary of the policy,

the *Thompson* court denied him the right to stack uninsured motorist coverage.

**5.** "Although lower state court decisions are not controlling on an issue on which the highest court of the state has not spoken, federal courts must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise." *Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273–74 (3d Cir.1985).

*rance* coverage as mandated by the MVFRL, held that the Supreme Court stacking cases under the now-repealed Uninsured Motorist Act extended into the MVFRL era as did the legislative policy of protecting insureds as much as possible and the judicial policy of construing the act liberally. *Tallman* held that a provision purporting to prevent stacking of underinsured motorist coverage was void as repugnant to the MVFRL, and that the insured could stack underinsured motorist coverage to the extent of damages. *Id.* at 602, 538 A.2d at 1359. I am persuaded that the Supreme Court of Pennsylvania would come to the same conclusions as the *Tallman* court, and thus I preliminarily conclude, as West American concedes, that stacking of uninsured motorist coverage is available under the MVFRL and is not prevented by section 1736. Under *Tallman*, then, Suzanne Park is entitled to stack uninsured motorist coverage *at least up to* her liability coverage.

*Tallman* does not, however, answer the question posed in this case. While the court in *Tallman* took note of section 1736, finding it did not affect its result, *see id.* at 601–02, 539 A.2d at 1358–59, it did not decide whether section 1736 prevents stacking *in excess of liability coverage,* as there the stacked underinsured motorist coverage was not greater than the liability coverage on the vehicle involved in the accident. *See Id.* at 594, 539 A.2d at 1355. Nevertheless, in light of the foregoing, I believe that the Supreme Court of Pennsylvania would hold that stacking of uninsured motorist coverage in excess of liability coverage is *not* prohibited by section 1736 of the MVFRL. I find several sources of support for this conclusion.

There is, as seen in *Blumling, Williams, Contrisciane, Sones,* and *Tallman,* a pro-stacking thrust throughout Pennsylvania case law under both the predecessor statute and the current MVFRL and, as noted by *Tallman,* the policies forwarded to jus-

tify stacking under the Uninsured Motorist Act continue under the MVFRL. In enacting the MVFRL, the Legislature of Pennsylvania clearly remained concerned that insureds be fully protected against injuries caused by uninsured motorists. *See* 75 Pa. Cons.Stat.Ann. § 1731(b) (Purdon supp. 1990) (declaring that purpose of uninsured motorist coverage is to "provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles"). *See Tallman,* 372 Pa.Super. at 598–99, 539 A.2d at 1357. That policy of full coverage, the first of the two justifications for stacking, would be vindicated by my conclusion which is also consistent with the clear trend of Pennsylvania case law.[6]

Of continued vigor, too, under the MVFRL, is the logic and policy behind the second major justification proffered for stacking under the Uninsured Motorist Act —*i.e.,* "the intended beneficiary of an uninsured motorist policy is entitled to multiple coverage when multiple premiums have been paid." *Contrisciane,* 504 Pa. at 338, 473 A.2d at 1010. Here, of course, the Parks were charged and paid premiums for *each* of the two vehicles covered. Under the rationale adopted by the Pennsylvania Supreme Court, then, they therefore reasonably expected that they had obtained uninsured motorist coverage for $100,000 pursuant to the dual undertaking by West America and were entitled to dual benefits not to exceed actual damages. *See Id.* If section 1736 were construed to prohibit stacking of uninsured motorist coverage in excess of liability coverage, insureds would be deprived of at least part of what the Pennsylvania Supreme Court has viewed as an insured's benefit of the bargain in paying multiple premiums. My views if accepted, then, would not somehow provide an unjust windfall to some insureds, based "on the number of automobiles they are fortunate enough to own." *Chartan v.*

---

**6.** I am satisfied, as West American admits, that the insurance contract by its terms allowed stacking, but I am not in particular relying on those terms, as I think that the public policy of

Pennsylvania would require the result I propose, even if the contract did not address the point, as multiple premiums have been paid for the uninsured coverage.

*Chubb Corp.*, 759 F.Supp. at 1129 (E.D.Pa. 1990). On the contrary, my conclusion is strictly in line with a result that the Supreme Court of Pennsylvania has determined is eminently fair, *i.e.*, recognizing multiple coverage for insureds who have paid multiple premiums. I can discern no signal from the MVFRL in general, or section 1736 more specifically, of a legislative intent to override this rationale for stacking predicated on fairness to the insured. My view of section 1736, then, comports with Pennsylvania's long-standing commitment to fairness for the insured.

Moreover, my conclusion would not thwart the policy purportedly expressed by section 1736, *i.e.*, to prevent "an insured from providing greater coverage, via uninsured/underinsured coverages, for himself and his additional insureds than the amount of coverage he provides for others injured through his negligence." *Tallman*, 372 Pa.Super. at 602, 539 A.2d at 1358–59 (quoting *Wolgemuth*, 370 Pa.Super. at 55 n. 3, 535 A.2d at 1147 n. 3). It is difficult to conceive that an insured would buy and insure multiple vehicles for the purpose of providing more uninsured motorist coverage for herself than for others injured through her negligence. I do not think that the Pennsylvania Legislature perceived this as an evil that needed remedying. And my conclusion would not cause "the new insurance system [under the MVFRL to] degenerat[e] into a purely first-party insurance system, where each driver is insured against his or her own loss, but no driver insured against the damage he or she may do to others." J. Ronca, L. Sloane, & J. Mundy, *Pennsylvania Motor Vehicle Insurance: An Analysis of the Financial Responsibility Law* § 6:11 at 104 (1986). This unpleasant scenario, rather, would be prevented under the view of section 1736 proposed here, as insurers cannot write *per vehicle insured* more uninsured motorist coverage than the liability coverage the insured has purchased. This, I believe, was the Legislature's intent in enacting section 1736. *Cf.* 1 Pa.Cons. Stat.Ann. § 1921 (Purdon supp. 1990) (legislative intent controls in interpretation and construction of statutes).

Furthermore, in promulgating section 1736, the Legislature must be presumed to have been aware of the long-standing Pennsylvania rule permitting stacking. *Tallman*, 372 Pa.Super. at 598, 539 A.2d at 1357. When drafting the MVFRL, the Legislature knew how to prohibit stacking in express terms, and did so when that was its intent. *See* 75 Pa.Cons.Stat.Ann. § 1717 (prohibiting stacking of first party liability coverage). No such restriction, however, is found in the subdivision of the MVFRL in which section 1736 is located. Juxtaposing the clear pro-stacking, full coverage, long-term trend of Pennsylvania case law with the coverage-limiting policy purportedly behind section 1736, I conclude that the Legislature surely would have been more explicit if it had intended to prevent stacking from causing uninsured motorist coverage to exceed liability coverage. The Legislature's silence as to not only the stacking of uninsured motorist coverage but stacking in excess of liability coverage, then, must be taken as intentional. *See Tallman*, 372 Pa.Super. at 599, 539 A.2d at 1357. There is, in fact, no evidence that the Legislature intended to affect stacking in any way when it promulgated section 1736.

Finally, my conclusion is bolstered by a new section added to the MVFRL, section 1738, which provides, in part:

(a) Limit for each vehicle.—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverage available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

Act of Feb. 7, 1990, No. 6, § 12 (§ 1738(a)), 1990 Pa.Legis.Serv. 23 (Purdon March 1990).

The parties agree that as section 1738 became effective on July 1, 1990, *see id.* § 32(8), 1990 Pa.Legis.Serv. 44, it is not applicable to this case. I note, however, that section 1736 has remained in force,

while section 1738, if it had been retroactively applicable here, would ratify the result I propose. Thus, it appears that the Pennsylvania Legislature felt section 1738 was not inconsistent with section 1736. Rather, section 1738 advanced Pennsylvania's long-held policy of fully compensating the injured insured for damages caused her by the negligent, uninsured driver.[7]

In view of the aforesaid, I join in the judgment of the court.

---

7. The fact that the Legislature promulgated section 1738 does not establish that the Legislature thought that, in light of section 1736, section 1738 was needed to allow stacking of uninsured motorist coverage in excess of liability coverage. The legislative history on this point cuts both ways and is circumstantial at best. It appears that House Bill No. 121, as amended, eventually became the law in which section 1738 was contained. That bill, in turn, was actually an amalgamation of an original House Bill No. 121, which did not deal with insurance reform at all, into which the Senate inserted all of its insurance reform bill, Senate Bill No. 1106, the final version of which contained section 1738. *See* Pa.Legis.J.—Senate, June 29, 1989, at 974 (statement of Sen. Loeper). While the earliest version of Senate Bill No. 1106, like the original House bill, did not contain the progenitor of section 1738, a proposed amendment to the original Senate bill would have prohibited the stacking of uninsured and underinsured motorist benefits altogether. *See Id.,* June 28, 1989, at 921, 932. That amendment was not adopted and, instead, an amendment containing section 1738 as promulgated was eventually adopted in its place. *See Id.,* June 29, 1989, at 970, 977. Then, as already stated, the Senate bill, as amended, was inserted into the House bill, and the House bill, as amended, containing section 1738, was eventually enacted into law. Nowhere in the various recorded debates in this legislative process have I been able to locate explicit comments on section 1738 or the reasons for its passage. I believe this ambiguous legislative history, typical of the give-and-take of the legislative process, can add nothing to anyone's understanding of section 1738 or section 1736.