551 A.2d 643

City of Scranton, Appellant *v.* Local Union No. 669 of The International Association of Fire Fighters, AFL-CIO, Appellee.

Argued November 3, 1988, before Judges DOYLE and SMITH, and Senior Judge KALISH, sitting as a panel of three.

*Sheldon Rosenberg, Rosenberg & Ufberg,* for appellant.

*Thomas W. Jennings,* with him, *Thomas H. Kohn, Sagot & Jennings,* for appellee.

OPINION BY JUDGE DOYLE, December 15, 1988:

This is an appeal by the City of Scranton (City) from an order of the Court of Common Pleas of Lackawanna County which first upheld an arbitration award and second granted the request of Local Union No. 669 of the International Association of Fire Fighters, AFL-CIO (Union) for payment of costs incurred for arbitration, attorney's fees and court costs. We affirm both determinations.

The background facts are interesting and novel. The City and the Union engaged in collective bargaining

negotiations for a new two-year contract to begin on January 1, 1987. When the parties reached an impasse, the Union requested that a board of arbitrators be appointed pursuant to Section 4(a) of the Act of June 24, 1968, P.L. 237, 43 P.S. §217.4(a) (Act 111). Each party selected its own arbitrator and a third neutral arbitrator was also chosen. Before any proceedings were undertaken, however, the negotiators for the City and the Union reached an agreement in November 1986 and a proposed collective bargaining contract ensued. The arbitration proceedings were thereupon suspended pending action by the Scranton City Council.

On February 18, 1987, the City Council rejected the proposed agreement. Accordingly, the Union requested that arbitration be resumed and, on April 25, 1987, the neutral arbitrator convened an interest arbitration hearing. Despite proper notice, the City refused to attend or participate in either the hearing or the subsequent executive session. An award was nonetheless entered. The City then, being dissatisfied with the award, petitioned the trial court to, *inter alia,* (1) vacate the entire award, (2) hold that the clause in the award pertaining to maintaining a 200 bargaining unit employee work force for the duration of the contract involved a nondelegable and nonwaivable duty of the executive and legislative branches, (3) order that the November 1986 contract which was submitted to, but not accepted by City Council was a complete, legally valid, enforceable contract, and (4) order that certain clauses of the collective bargaining agreement be expunged. The Union filed a cross-appeal to enforce the award and to compel payment of expenses incurred pursuant to Section 8 of Act 111, 43 P.S. §217.8. The Union also sought payment of attorney's fees and court costs. The trial court consolidated the two petitions and by order dated January 7, 1988, it denied the City's ap-

peal and granted the Union's petition to enforce the award. It further granted the Union's request for expenses, attorney's fees and court costs. This appeal ensued.

It is well settled that our scope of review over an Act 111 arbitration award is in the nature of narrow certiorari and we may only inquire whether the arbitrator had jurisdiction, whether the proceedings were conducted with regularity, whether the arbitrators exceeded their authority and, in addition, may review any constitutional questions. *Appeal of Upper Providence Township,* 514 Pa. 501, 526 A.2d 315 (1987); *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969). Keeping this limited review in mind, we shall consider the City's contentions.

First, the City contends that the arbitration panel was without jurisdiction to enter an award because the conditions precedent to the convening of such a panel had not been met. There is certainly some question as to whether the City waived these arguments inasmuch as it did not participate in the proceedings before the arbitrators and, hence, did not raise the issues there. Arguably, however, these challenges, although we deem them to be substantively meritless, could be viewed as subject matter jurisdictional in nature and, hence, capable of being raised at any time. *See Altieri v. Pennsylvania Board of Probation and Parole,* 88 Pa. Commonwealth Ct. 592, 495 A.2d 213 (1985).

Section 4 of Act 111 provides in pertinent part:

If in any case of a dispute between a public employer and its policemen or firemen employes the collective bargaining process reaches an impasse and stalemate, or if the appropriate lawmaking body does not approve the agreement reached by collective bargaining, with the result that said employers and employes are unable to

effect a settlement, then either party to the dispute, after written notice to the other party containing specifications of the issue or issues in dispute, may request the appointment of a board of arbitration.

For purposes of this section, an impasse or stalemate shall be deemed to occur in the collective bargaining process if the parties do not reach a settlement of the issue or issues in dispute by way of a written agreement within thirty days after collective bargaining proceedings have been initiated.

In the case of disputes involving political subdivisions of the Commonwealth, the agreement shall be deemed not approved within the meaning of this section if it is not approved by the appropriate lawmaking body within one month after the agreement is reached by way of collective bargaining.

The City concedes in its brief that the lawmaking body (City Council) did not approve the contract. It asserts, however, that a settlement had been reached by the *parties* and that the Union did not meet the specification of issues requirement appearing in Section 4. With respect to the first assertion, it is patently frivolous. While the Union and the Mayor may have reached a *tentative* agreement in November 1986, that agreement was ultimately rejected by the City Council. Thus, as a practical matter, there was no settlement of the dispute within the intendment of Section 4. The "City" cannot argue it is bicephalous, adopt what its Mayor accomplished, ignore the actions of its Council, and divide itself to achieve compliance with Section 4 of the Act. Moreover, Section 4 clearly indicates that an impasse exists where the agreement is not approved by the appropriate lawmaking body within one month after the

agreement is reached by collective bargaining. No such approval was obtained. Thus, by definition, an impasse existed. And, if an impasse existed, logically, there could be no settlement.

The City's other contention requires us to distinguish between the issues appearing in the tentative settlement and those appearing in the "specification of issues" which were submitted to the arbitrator before the tentative settlement was reached. The City seems to be suggesting that once the November tentative agreement was rejected by the City Council, the Union could submit for arbitration only the issues in that agreement and could not then arbitrate over all the issues appearing in the specification of issues. This theory is unsupported by legal citation, and we are not surprised. Certainly, once the tentative agreement collapsed the parties were placed in their original positions of having no agreement at all; accordingly, all issues appearing in the specification of issues were open for consideration before the arbitration panel. Moreover, as the Union points out in its brief, the specification of issues was submitted in September 1986 and the tentative agreement was not reached until two months later. The Union could not have known in September the terms of the tentative agreement entered into in November. We, thus, conclude that the arbitration board was properly convened and had the authority to enter an award.

The City next contends that certain of the provisions appearing in the award, including some which were mandated and others which had appeared in prior contracts and were simply carried over, are illegal. Under Act 111, provisions to collective bargaining agreements may arise in two ways: by the arbitrators' mandate or by voluntary agreement between the parties. The arbitrators' authority, however, is limited. They cannot man-

date that the public employer perform an illegal act, *i.e.*, one which is not within the statutory authority of the employer or an act which is prohibited by law. *Upper Providence; Washington Arbitration Case*. Accordingly, if arbitrators mandate the performance of an illegal act, then they act outside of the scope of *their* authority and the court must strike down the illegal award. *Chirico v. Board of Supervisors for Newton Township*, 504 Pa. 71, 470 A.2d 470 (1983).

The arbitrators' mandate, however, must be distinguished from a situation where an employer *voluntarily* agrees to perform an act. Where it does so it cannot later contend that the act is illegal and refuse to perform it; indeed it will be estopped from doing so. *Grottenthaler v. Pennsylvania State Police*, 488 Pa. 19, 410 A.2d 806 (1980); *Fraternal Order of Police v. Hickey*, 499 Pa. 194, 452 A.2d 1005 (1982) (plurality opinion).

There exists, however, in addition, a third and heretofore judicially unmeasured scenario; an unlawful provision is voluntarily agreed to by the public employer and is then carried forward in an "as is" clause in successive contracts without ever being challenged. At some point thereafter, the employer determines the provision to be illegal. What can it do? It is clear that it cannot raise illegality as a defense to the *existing* award or agreement. *Hickey*. What it can do is bargain to have that provision removed from future contracts. *Id*. As Justice, (now Chief Justice) NIX explained in *Hickey*:

> [T]he provision [at issue] was only binding for the year of 1978 . . . . At the end of that contract period, the new administration was obviously free to decline to agree to this or any other provision it determined to be in conflict with its policy. Thus, through the bargaining process, the withdrawal of this term would be accommodated by some other concession by the govern-

mental unit employer which would produce an agreement where each party is provided an equal opportunity to fashion an agreement in their best interest.

*Id.* at 200-01, 452 A.2d at 1008.

It can thus be seen that a public employer may assert the defense of illegality in some cases (initial award), but not in all situations (by agreement or by submissive default in an award). In the instant case, certain provisions the city now attacks were newly mandated by the arbitrators and others were merely voluntary provisions carried forward from previous contracts. Assuming, *arguendo,* that *all* the provisions the City now attacks are illegal, it is clear that under normal circumstances those newly mandated by the arbitrators would be struck, and those merely being carried forward the City could have bargained to have eliminated. But this case does not present us with normal circumstances. Instead, we have a public employer which, despite notice, refused to even participate in the arbitration proceedings and, hence, raised none of these issues before the arbitration panel. The Union thus asserts that the City has waived the right to challenge those issues on appeal to the trial court. The City, on the other hand, contends that the issues it now seeks to challenge cannot be waived because the provisions it challenges are, in the City's view, prohibited subjects of bargaining in that they pertain to "important policy matters of government which are the subject of decisions elected officials make on the provision of services given to the public, their level and quality, rather than decisions on terms and conditions of employment." City's brief, page 11. The City further reasons that if these issues are waived then elected officials could not be held accountable by the public. The City cites no authority for its theory. The Union, however, has cited

authority for the proposition that absent a specific statute precluding arbitration where one party is not present, one who fails to attend an arbitration hearing has waived his right to complain. *See, e.g., Musicians, Local 336 v. Bonatz,* 90 LRRM 2956 (D. N.J. 1974); *United Steel Workers of America v. Danville Foundry Corp.,* 52 LRRM 2584 (M.D. Pa. 1963); *Local 149, Boot and Shoe Workers Union v. Faith Shoe Co.,* 201 F. Supp. 234 (E.D. Pa. 1962).

The purpose of arbitration is to resolve labor disputes early on and the policy of avoiding use of the courts for such disputes is a strong one. *Chirico.* Were we to permit a party who has not participated in the arbitration hearing, despite proper notice, to raise issues for the first time on appeal to the trial court we would be sanctioning a procedure which would actually promote rather than discourage, appeals and, hence, would encourage protracted litigation. Such result would be in direct contravention of the purpose of arbitration. Further, with respect to the City's argument that public employers must be held accountable and, thus, issues important to the public cannot be deemed waivable, we feel certain that those City officials who were responsible for the boycott here *will* be held accountable by the citizens by some method at some future time. In summary, the City's position that the issues *it* considers paramount are too important to waive, is soundly rejected; those issues have indeed been waived by the City.

Finally, we must consider whether the trial court acted improperly in imposing various fees upon the City. First, the City maintains that it should not be obligated to pay costs of the arbitration hearing. Section 8 of Act 111 provides:

> The compensation, if any, of the arbitrator appointed by the policemen or firemen shall be

paid by them. The compensation of the other two arbitrators, as well as all stenographic and other expenses incurred by the arbitration panel in connection with the arbitration proceedings, shall be paid by the political subdivision or by the Commonwealth, as the case may be.

The City maintains that because the arbitration panel was illegally convened it had no obligation to pay the Section 8 costs. Inasmuch as we have rejected the City's contention that the panel was illegally convened and without jurisdiction, we must *a fortiori* reject its argument that it is not obligated to pay the Section 8 costs.

With respect to attorney's fees and court costs, the trial court imposed them because it determined that the City's appeal was arbitrary, vexatious and in bad faith. *See* 42 Pa. C. S. §2503(9). In making this determination, the trial court observed that numerous legal arguments raised by the City had no basis in law or fact[1] and that the City, having agreed to a neutral arbitrator then filed a complaint in equity to enjoin that very arbitrator from participating and refused to attend the arbitration proceedings in part to "protest" the neutral arbitrator's participation. We certainly think that the City has demonstrated no plausible excuse for its failure to participate in the proceedings before the arbitrator and, thus, its complaints to the trial court were arbitrary, vexatious and in bad faith. Accordingly, we uphold the order directing the payment of attorney's fees and costs.

---

[1] One example of the City's meritless arguments to the trial court was its position that the City Council of Scranton was not the appropriate lawmaking body to reject the tentative agreement. As the trial court pointed out, City Council is the *only* lawmaking body. The City also argued to the trial court that the Union had never filed any specification of issues. This was a blatant factual misstatement.

Based upon the foregoing opinion, the order of the Court of Common Pleas of Lackawanna County is affirmed.

ORDER

NOW, December 15, 1988, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is hereby affirmed.