**CITY OF PHILADELPHIA, Appellant,**

v.

**FRATERNAL ORDER OF POLICE LODGE NO. 5.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 1996.
Decided June 18, 1996.

Sheryl L. Auerbach, for Appellant.

Thomas W. Jennings, for Appellee.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and FLAHERTY, JJ.

SMITH, Judge.

Before the Court is an appeal on behalf of the City of Philadelphia (City) from the June 1, 1995 order of the Court of Common Pleas of Philadelphia County which denied the City's petition to vacate and granted the Union's cross-petition to confirm a grievance arbitration award (1995 award) entered in favor of the Fraternal Order of the Police, Lodge No. 5 (Union).[1] The 1995 award, which was entered pursuant to the Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1— 217.10, commonly referred to as "Act 111" or

---

1. This opinion is filed pursuant to Section 256(b) of the Internal Operating Procedures of the Com-monwealth Court, 210 Pa.Code § 67.29(b).

the "Collective Bargaining by Policemen and Firemen Act," granted Philadelphia police officers overtime for all time worked in excess of eight hours per day since June 8, 1990.

The issues presented by the City are whether the 1995 award violated Section 209(k) of the Pennsylvania Intergovernmental Cooperation Authority Act for the Cities of the First Class (PICA Act), Act of June 5, 1991, P.L. 9, 53 P.S. § 12720.209(k), and public policy due to the grievance arbitrator's failure to consider the financial impact of the overtime award on the City; whether the grievance arbitrator acted in excess of his authority by granting an increase in wages that was prohibited by the parties' contract; and whether the grievance arbitrator acted without jurisdiction in issuing the 1995 award, where an Act 111 interest arbitration panel specifically retained jurisdiction over a 1989 shift schedule award related to disputes regarding the new schedule.

Also before the Court is the Union's motion to dismiss the City's appeal as to its claim that the grievance arbitrator failed to comply with the provisions of the PICA Act and the City's claim that public policy considerations require this Court to apply the PICA Act to this appeal. The Union maintains that the City has waived these issues by failing to raise them before either the grievance arbitrator or the common pleas court.

## I.

This matter arises out of a long-standing dispute between the City and the Union regarding the police officers' shift schedules. For many years, the police officers in Philadelphia worked a schedule which they referred to as the "killer shift," which began with six days of work from 8:00 a.m. to 4 p.m., then two days off with shifts rotating backward. Under the "killer shift," police officers worked 2088 hours per year. In the early 1980s the Union and the City agreed to experiment with a new schedule. Under the "35th District Schedule" the officers agreed

to work 8.5 hours per day in exchange for an additional 17 days off per year, for an annual total of 2,074 hours. The parties agreed that the officers would not receive overtime for the extra 30 minutes each day. The 35th District Schedule was in place for one year before the officers returned to the previous "killer shift."

The parties subsequently entered into negotiations regarding a shift schedule to be included in the new contract that would succeed the contract expiring on June 30, 1988. The Union sought city-wide implementation of the 35th District Schedule but the City refused. The matter was submitted to an Act 111 interest arbitration panel, which granted the parties one year to reach an agreement. Because of an impasse the panel entered an interim award that required the parties to submit their final best offer to an impartial arbitrator. The Union offered the 35th District Schedule, and the City offered the C–7 Schedule, which provided for an 8.25–hour shift in exchange for 8 additional days off, for an annual total of 2,087.25 hours. Neither proposal provided for overtime for the extra 15 or 30 minutes in the regular work day.

In a November 21, 1989 award, the arbitration panel majority adopted the City's C–7 schedule which was to be instituted January 8, 1990. This interest award also provided for a Shift Committee to resolve any difficulties related to implementation of the new schedule. The parties could not resolve the 15 minutes overtime issue, and the Union rejected the City's proposal to retain a neutral arbitrator to mediate the dispute. As a consequence, on January 9, 1990, the Union filed an overtime grievance alleging a contract violation. On February 18, 1995, Louis Aronin, the grievance arbitrator, issued the 1995 award sustaining the Union's grievance and directing the City to pay overtime for the 15 minutes worked each day in excess of eight hours. The common pleas court confirmed the award.[2]

2. In the interim, on June 6, 1991, the General Assembly enacted the PICA Act in order to effectively assist cities of the first class in financing their cash flow needs. Under the PICA Act, the

City is required to develop and submit to the oversight authority, the Pennsylvania Intergovernmental Cooperation Authority (PICA), a five-year financial plan (PICA Plan) setting forth the

As noted by the common pleas court, an appellate court's scope of review of an Act 111 grievance arbitration award is in the nature of narrow certiorari. *Pennsylvania State Police v. Pennsylvania State Troopers' Association,* 540 Pa. 66, 656 A.2d 83 (1995). "The narrow certiorari scope of review limits a reviewing court to questions regarding: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights." *Id.* at 71, 656 A.2d at 85. The Supreme Court stated that the commission of an error of law alone does not warrant reversal under the narrow certiorari scope of review.

## II.

Initially, this Court must address the Union's argument that the appeal should be dismissed for failure of the City to preserve for review questions concerning the grievance arbitrator's alleged noncompliance with the PICA Act and related public policy considerations. The City contends that the 1995 award must be vacated in accordance with Section 209(k) of the PICA Act, 53 P.S. § 12720.209(k), because the grievance arbitrator failed to take into account the City's PICA Plan or its financial ability to pay the cost of increased wages to the police officers. Section 209(k) of the PICA Act, relating to the effect of a PICA Plan upon certain arbitration awards, provides in pertinent part:

(1) After the approval by the authority of a financial plan submitted pursuant to this section, any determination of a board of arbitration established pursuant to the provisions of [Act 111] providing for an increase in wages or fringe benefits of any employee of an assisted city under the plan, in addition to considering any standard or factor required to be considered by

applicable law, shall take into consideration and accord substantial weight to:

(i) the approved financial plan; and

(ii) the financial ability of the assisted city to pay the cost of such increase in wages or fringe benefits without adversely affecting levels of service.

. . . .

(3)(i) *Any party to a proceeding before a board of arbitration may appeal to the court of common pleas to review:*

(A) the consideration of the assisted city's financial plan;

(B) the determination as to the assisted city's financial ability to pay; or

(C) *the failure of the board of arbitration to issue a determination,* including a detailed writing of all factors which the board of arbitration took into account in considering and giving substantial weight to the assisted city's financial ability to pay and the assisted city's financial plan.

. . . .

(iii) *Such appeal shall be commenced not later than 30 days after the issuance of a final determination by the board of arbitration.* (Emphasis added.)

The City maintains, as well, that public policy considerations embodied in Section 102(a) of the PICA Act, 53 P.S. § 12720.102(a), require that the 1995 award be vacated.[3]

In support of its position, the Union argues that the City failed to raise any issues regarding compliance with the PICA Act or related public policy considerations either before the grievance arbitrator or before the common pleas court. The Union asserts that these issues have been waived pursuant to Pa. R.A.P. 302(a), which precludes an appellant from raising an issue for the first time

City's projected revenues and expenses. Upon approval of the plan, PICA will provide the City with bond proceeds to aid in the City's financial recovery. The City's original PICA Plan was approved on May 2, 1994 and covers the fiscal years 1993 through 1997.

**3.** Section 102(a) provides in pertinent part:
It is hereby declared to be a public policy of the Commonwealth to exercise its retained sovereign powers with regard to taxation, debt

issuance and matters of Statewide concern in a manner calculated to foster the fiscal integrity of cities of the first class to assure that these cities provide for the health, safety and welfare of their citizens; pay principal and interest owed on their debt obligations when due; meet financial obligations to their employees, vendors and suppliers; and provide for proper financial planning procedures and budgetary practices.

on appeal. In opposition, the City contends that under the facts and circumstances of this case, the PICA Act and related public policy issues were not waived. Alternatively, the City states that because compelling questions of public policy related to the expenditure of public funds are involved, these issues cannot be disregarded under the guise of a waiver.

This Court's review of the record indicates that although the City mentioned before the grievance arbitrator that the 15 minutes of overtime each day would result in an extra $10 million per year in added costs to the City, the City did not raise the issue of compliance by the grievance arbitrator with Section 209(k) of the PICA Act or assert that the overtime award would contravene PICA's fiscal public policy considerations. Moreover, although the City timely appealed the 1995 award to the common pleas court, the City did not raise before that court any issue regarding the grievance arbitrator's noncompliance with the PICA Act or related public policy considerations.

■ A well-established rule in this Commonwealth is that issues not raised in the court below are waived and may not be raised for the first time on appeal. *Fraternal Order of Police, Lodge 5 v. City of Philadelphia*, 160 Pa.Cmwlth. 409, 635 A.2d 222, 229 (1993), *appeal denied*, 538 Pa. 616, 645 A.2d 1319 (1994). Because of the City's failure to raise the PICA Act before the arbitrator or the common pleas court, this Court is constrained to hold that the City has waived any issues regarding the grievance arbitrator's claimed noncompliance with PICA Act provisions.

■ The City alternatively contends that issues regarding compliance with the PICA

Act and related public policy mandates cannot be waived in a case of the magnitude of the present case. In *City of Scranton v. Local Union No. 669 of the International Association of Fire Fighters, AFL–CIO*, 122 Pa.Cmwlth. 140, 551 A.2d 643 (1988), this Court, in reviewing an Act 111 arbitration award, was presented with a similar situation where the public employer raised issues on appeal that were not raised in the interest arbitration hearing in which the city refused to participate. The Court rejected the city's argument that public policy considerations required review of the issues it raised as to the illegality of provisions in the arbitration award, noting that the purpose of arbitration is to resolve labor disputes while avoiding use of the courts and that to permit such an appeal would promote protracted litigation. Regarding the city's public policy argument, the Court stated:

> [W]ith respect to the City's argument that public employers must be held accountable and, thus, issues important to the public cannot be deemed waivable, we feel certain that those City officials who were responsible for the boycott here *will* be held accountable by the citizens by some method at some future time. In summary, the City's position that the issues *it* considers paramount are too important to waive, is soundly rejected; those issues have indeed been waived by the City.

*City of Scranton*, 551 A.2d at 647 (emphasis in original). The City's contention in the present case that PICA-related issues cannot be waived on public policy grounds is similarly rejected.[4]

### III.

■ The City further maintains that the arbitrator exceeded his limited authority un-

---

4. Even accepting *arguendo* the City's contention that PICA Act issues are non-waivable, the Court nonetheless concludes that the requirements of Section 209(k) of the PICA Act operate against the City's position. That section clearly applies to Act 111 interest arbitration and does not apply to Act 111 grievance arbitration proceedings involving the terms of existing contracts.

" 'Grievance' or 'contract interpretation' arbitration involves the resolution by a third party of a dispute between public employer and public employee over the proper interpretation of an

existing collective bargaining agreement. 'Interest' arbitration involves the resolution of an impasse in collective bargaining over the terms of a new contract." *Township of Moon v. Police Officers of the Township of Moon*, 508 Pa. 495, 501 n. 5, 498 A.2d 1305, 1308 n. 5 (1985). The 1995 award was not issued by an Act 111 interest arbitration panel but rather by a sole arbitrator in a grievance proceeding established pursuant to Article XIX of the parties' contract for the period July 1, 1988 through June 30, 1990.

der the parties' contract by rolling back the regular work day from 8.25 to 8 hours and awarding the officers 15 minutes of daily built-in overtime, or a 4.7 per cent increase of the officers' wage scale. In support the City cites Article XIX(H), page 31 of the parties' 1988–1990 contract, which states: "The arbitrator selected shall have no authority to add to, subtract from, or in any way alter the terms of this contract, Act 111 arbitration awards or the scale of wages set forth therein." To the contrary, the Union refers to Article V(C), page 7 of the parties' 1988–1990 contract, which provides: "All employees below the rank of Captain shall receive compensation at the rate of one and one-half (1–1/2) times their regular rate of pay for all hours worked in excess of eight (8) hours on any given work day and forty (40) hours in a work week."

In its submission to the arbitration panel in the shift schedule interest arbitration, the City proposed the new shift structure which contained the 8.25 hour work day. The City, however, made no proposal to modify Article V(C) to accommodate the proposed lengthened work day. In fact, at the Act 111 interest arbitration hearing, the City refused to agree to any modification of the contract provisions. As a result, the grievance arbitrator, in resolving the Union's overtime claim, was bound by Article XIX(H) of the contract to follow the terms of Article V(C). The grievance arbitrator, therefore, did not increase the police officers' wages but rather remedied the City's violation of Article V(C) of the contract requiring the City to pay overtime for any time worked in excess of eight hours in any given work day. Under this set of circumstances, the grievance arbitrator did not exceed his authority in issuing the 1995 award.

 The City further contends that the · grievance arbitrator lacked jurisdiction to settle the overtime dispute because the shift schedule interest arbitration panel, in its 1989 award, retained jurisdiction for itself to settle any disputes arising out of the implementation of the new schedule. Despite the interest arbitration panel's retention of jurisdiction, the fact remains that Article XIX(A)5 of the 1988–90 contract requires that the

grievance and arbitration procedures will be the exclusive remedy in the event of an alleged violation of the parties' contract. Furthermore, during the grievance arbitration proceeding the City never challenged the arbitrator's jurisdiction. Accordingly, the grievance arbitrator not only had proper but exclusive jurisdiction over the Union's grievance alleging a violation of Article V(C).

This Court is bound by the narrow certiorari scope of review. Because it finds no basis for reversal of the common pleas court under the mandated scope of review, the order of the court confirming the 1995 award is affirmed for the reasons articulated in this opinion.

### ORDER

AND NOW, this 18th day of June, 1996, Appellee Fraternal Order of Police Lodge No. 5's motion to dismiss Appellant City of Philadelphia's claims that (1) the grievance arbitrator failed to comply with the provisions of the PICA Act and (2) that public policy considerations require this Court to apply the PICA Act to this appeal, is granted. The order of the Court of Common Pleas of Philadelphia County is hereby affirmed.

KELLEY, Judge, dissenting.

I respectfully dissent. I disagree with the majority's conclusion that the City has waived the issues regarding compliance with the PICA Act.

First, I believe that the PICA Act is controlling herein. As noted by the majority, the PICA Act was enacted to effectively assist cities of the first class in financing their cash flow needs. Clearly, an arbitration award, whether it is in response to interest arbitration or grievance arbitration, directing the City to pay its police officers overtime for all time worked in excess of 8 hours per day since June 8, 1990 will affect the City's cash flow needs.

Second, I do not believe that it is sound judicial policy to set forth an all encompassing rule that waiver pertains to matters of public policy. The majority cites *City of Scranton v. Local Union No. 669 of the*

*International Association of Fire Fighters, AFL–CIO,* 122 Pa.Cmwlth. 140, 551 A.2d 643 (1988) to support is holding that issues on appeal can be waived on public policy grounds. However, in *City of Scranton,* the city knowingly decided not to participate in the arbitration hearing despite proper notice and, more importantly, there was no legislative enactment setting forth an express public policy of the Commonwealth. Herein, there is the PICA Act which declares that it is the public policy of the Commonwealth

> to exercise its retained sovereign powers with regard to taxation, debt issuance and matters of Statewide concern in a manner calculated to foster the fiscal integrity of cities of the first class to assure that these cities provide for the health, safety and welfare of their citizens; pay principal and interest owed on their debt obligations when due; meet financial obligations to their employees, vendors and suppliers; and provide for proper financial planning procedures and budgeting practices. The inability of a city of the first class to provide essential services to its citizens as a result of a fiscal emergency is hereby determined to affect adversely the health, safety and welfare not only of the citizens of that municipality but also of other citizens in this Commonwealth.

Section 102(a) of the PICA Act, 53 P.S. § 12720.102(a).

Accordingly, I would hold that the PICA-related issues presented by the City herein have not been waived and would address the impact of the provisions of the PICA Act to the present matter.

COLINS, President Judge, and FLAHERTY, J., join in this dissenting opinion.