## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Samantha Melamed,    :
The Philadelphia Inquirer    :
    :
From a Decision of:    :
Office of Open Records    :
    :
Appeal of: Samantha Melamed,    :   No. 914 C.D. 2021
The Philadelphia Inquirer    :   Argued: November 14, 2022


BEFORE:   HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE COVEY                       FILED: December 19, 2022


      Samantha Melamed and The Philadelphia Inquirer (collectively, Requester)[1] appeal from the Philadelphia County Common Pleas Court's (trial court) July 23, 2021 order affirming the Office of Open Records' (OOR) Final Determination that granted in part and denied in part Requester's appeals from the City of Philadelphia (City) Police Department's (PPD) denial of the Right-to-Know Law (RTKL)[2] request for records reflecting PPD officers dismissed in 2020 (Request). Requester presents one issue for this Court's review: whether the trial court erred by concluding that Section 708(b)(7)(viii) of the RTKL, 65 P.S. § 67.708(b)(7)(viii), did not require PPD to produce a list of officers whose dismissals were pending a grievance arbitration process in 2020.[3] After review, this Court affirms.

---

[1] Melamed is a staff writer for The Philadelphia Inquirer.

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[3] Requester presents two issues in her Statement of Questions Involved: (1) whether records reflecting 2020 PPD personnel dismissals concern the "final action of an agency that results in

On July 6, 2020, Requester emailed the Request to PPD for "[a]ny record that reflects the police personnel dismissed in 2020, including name and rank and effective date of dismissal. Please include all dismissals from Jan[uary] 1, 2020[,] until the date a response is provided." Reproduced Record (R.R.) at 1a. Because PPD did not respond to the Request or invoke an extension to respond within five days, the Request was deemed denied.[4] *See* Sections 901 and 902(b) of the RTKL, 65 P.S. §§ 67.901, 67.902(b).

On July 23, 2020, Requester appealed to the OOR, declaring, in relevant part:

> [I]t is well documented that the [R]equest falls within those materials rendered public by the [RTKL]. I request **final** dismissals of police personnel in 2020, and the [RTKL's] exemption for personnel records [in Section 708(b)(7)(viii) of the RTKL] states[:] "This subparagraph shall not apply to the **final action of an agency** that results in demotion or discharge." [65 P.S. § 67.708(b)(7)(viii).]
>
> This is a time-sensitive matter, as it is the City's position that those dismissals are no longer public once a fired officer has appealed or entered arbitration. Thus, according to the [C]ity, these public records then become un-public. While I do not agree with that position, my goal right now is not to argue that issue[,] but to obtain the records in a timely fashion - that is, ideally, within the five days required by the [RTKL]. This [R]equest, given that it is limited in scope and has been made and granted repeatedly for previous time periods, should not trigger

demotion or discharge" such that their disclosure is mandated by Section 708(b)(7)(viii) of the RTKL, 65 P.S. § 67.708(b)(7)(viii); and (2) whether the trial court erred by deciding that the PPD is not required to produce records related to the termination of personnel who are arbitrating their dismissals. *See* Requester Br. at 4. Because both issues are subsumed in this Court's analysis of whether the trial court erred by affirming the OOR's interpretation of Section 708(b)(7)(viii) of the RTKL, they will be addressed accordingly herein.

[4] Requester received an auto-reply to her email indicating that RTKL operations had been suspended. *See* R.R. at 5a, 14a. Thereafter, Divisional Deputy City Solicitor Feige Grundman assured Requester that although City department responses may be delayed because of the COVID-19 pandemic, the City was processing RTKL requests. *See* R.R. at 13a-14a.

2

any of the reasons for extension of time listed under the [RTKL]. The legal review has been conducted in the past, no redactions are needed, and no remote filing system is involved.

R.R. at 5a (emphasis added). The OOR invited the parties to supplement the record and directed the PPD to notify third parties of their ability to participate in the appeal.

By September 10, 2020 letter, PPD responded to Requester's appeal, therein asserting that it should be dismissed or denied because the PPD "has no records responsive to [Requester's] Request to the extent it seeks final actions of discharge for PPD officers dismissed in 2020." R.R. at 7a. PPD claimed that, since its notices of dismissal are subject to further review under a mandatory grievance arbitration process, they are not final agency actions until that process is complete, and, thus, they are exempt from disclosure under Section 708(b)(7)(viii) of the RTKL and what is referred to as the Personnel Files Act (Act).[5] In support of its position, PPD produced affidavits by PPD's Open Records Officer, Lieutenant Barry Jacobs (Jacobs), and Deputy Director of the Mayor's Office of Labor Relations, Rebecca Hartz (Hartz).[6] Jacobs attested that he searched PPD's records and "there were no final actions of discharge for PPD officers dismissed in 2020." R.R. at 17a. Jacobs added:

---

[5] Act of November 26, 1978, P.L. 1212, *as amended*, 43 P.S. §§ 1321-1324.

[6] A local agency may provide affidavits to detail the search its RTKL officer conducted for documents responsive to a[n] RTKL request and the justification, if applicable, for any exemption from public disclosure or privilege relied upon for denying a requester access to responsive documents[.] *Off*[.] *of Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013). Relevant and credible testimonial affidavits may provide sufficient evidence in support of a claimed exemption[.]

*Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017). "Where, as here, no evidence has been presented to show that [PPD] acted in bad faith, the averments in the [PPD's] affidavits should be accepted as true." *McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 382-83 (Pa. Cmwlth. 2014).

3

a. Per the PPD Collective Bargaining Agreement [(CBA)] with the Fraternal Order of Police [(FOP)],[7] officers who are dismissed by PPD have the opportunity to arbitrate their dismissal[s].

b. Any records PPD maintains of officers dismissed in 2020 are not final actions of discharge because no officers that were dismissed by PPD in 2020 have completed the arbitration process. Thus, none of the pending 2020 PPD officer dismissals constitute final actions of demotions or discharge.

c. As soon as any of the officers dismisse[d] by PPD in 2020 complete the arbitration process, if their dismissals are upheld, the dismissal would be a final action of discharge and considered public.

R.R. at 17a.

Hartz expounded in her affidavit:

4. Per [Section 7-303 of] the [Philadelphia Code, Phila. Code § 7-303,] when a City agency wishes to terminate or demote a City employee who is a member of the Civil Service, it must have just cause for doing so.

a. The agency must first issue a notice of intent to demote or dismiss the employee. The employee may respond, in writing, within ten (10) days of service of the notice. Within twenty (20) days after the expiration of that 10-day period, the City may issue to the employee a notice of the effective date of the demotion or dismissal.

b. Under [Section 7-201 of] the [City's] Civil Service [Commission (Commission)] Regulations [(Regulations), Phila. Code § 7-201], an employee may, within thirty (30) days, appeal the dismissal or demotion to the [Commission].

c. Represented employees may have a contractual right to grieve the disciplinary action and have the issue submitted to a neutral arbitrator for decision, in lieu of decision by the [Commission]. The

---

[7] The FOP CBA is not part of the record before this Court.

4

timeline for the grievance process is set forth in the respective collective bargaining agreement.

5. Per the City's [CBA] with [FOP], PPD employees represented by the FOP may file a grievance with the Police Commissioner or his/her designee, challenging the discipline.

6. Per the CBA, if the grievance is not resolved by the Police Commissioner or his/her designee, the [g]rievant may next file a grievance with the Director of Labor Relations. If the grievance is not resolved at that stage, the [FOP] may demand arbitration. The discipline remains in effect while any such demand is pending.

   a. If the [FOP] elects to pursue arbitration, the decision of the arbitrator is final and binding on all parties.

7. If an arbitrator sustains the grievance, the arbitration award may - in addition to any award reinstating the grievant to his/her last position - require the City to expunge the notices of discipline - both the notice of intended discipline and the notice of the final disciplinary action - from that employee's personnel file.

R.R. at 19a-20a.

On September 18, 2020, Requester responded:

[T]his case[] . . . deals with a record that the [City] has produced previously, pursuant to the [RTKL], but which it now deems exempt from that law.[8]

I believe the [RTKL] is clear in this matter, as it says the exemption for personnel files "shall not apply to the final action of an agency that results in demotion or discharge." [65 P.S. § 67.708(b)(7)(viii).] I'm not asking for access to the contents of personnel files, written criticism, or any internal information, other than access to final actions of discharge, whether or not they have subsequently been or

---

[8] Requester included with her September 18, 2020 email a list of dismissed PPD officers the PPD previously produced in response to a 2019 RTKL request by the Defender Association of Philadelphia, plus a 2019 PPD press release announcing the intent to dismiss an officer. *See* R.R. at 21a, 23a-25a.

will possibly be contested. The former employee's quest to be reinstated does not change the final nature of those dismissals. And even if an employee is reinstated, the end result of the arbitration is public pursuant to [the RTKL], including any order for reinstatement.

. . . .

Finally, even if the [C]ity's perspective on dismissals -- that they are only final once arbitration has concluded or the period to seek arbitration has expired -- is deemed correct, the [C]ity should be then compelled in response to this [R]equest to produce any documents related to dismissal that became final per the [C]ity's definition, in 2020 [] (arbitration was concluded with an outcome other than reinstatement).

R.R. at 21a-22a.

On December 4, 2020, the OOR issued the Final Determination, holding "[PPD] has met its burden of proving that no final actions resulting in demotion of [sic] discharge for police personnel who received a notice of dismissal in 2020 exist, as of the date of the Request." OOR Final Determination at 6 (quotation marks omitted). However, "while [PPD] is not required to produce records related to the termination of personnel who are still involved in the grievance process, it must produce records of personnel whose dismissal became final during the timeframe identified in the Request, regardless of when the dismissal was initiated." *Id*. at 7. On December 29, 2020, Requester timely appealed to the trial court.

On June 28, 2021, Jacobs issued a supplemental affidavit providing Requester with a list of officer discharges that became final in 2020 after completion of the officers' grievance arbitration processes. *See* Requester Br. at 5 n.1; *see also* R.R. at 124a-127a. Specifically, Jacobs attested that, although there were no final 2020 dismissal actions at the time PPD received the July 6, 2020 Request, on July 31, 2020, PPD dismissed Officer Luis Miranda, who did not appeal from his

6

dismissal, and, thus, PPD provided a record of that dismissal to Requester after it was final. *See* R.R. at 124a. Jacobs further disclosed that PPD officer Bryan Turner's September 10, 2018 dismissal became final on January 20, 2020; PPD officer Jessica Kovacs' January 15, 2019 dismissal became final on March 18, 2020; and PPD officer Daniel Farrelly's August 19, 2019 dismissal became final on December 18, 2020. *See* R.R. at 127a. Jacobs also reported that PPD officer Javier Montanez was initially discharged on May 20, 2020, but was reinstated on March 22, 2021, and the City was ordered to delete all references to the May 20, 2020 dismissal because it was without just cause. *See* R.R. at 125a.

After briefing[9] and oral argument, by July 23, 2021 order, the trial court affirmed the OOR's Final Determination, holding that, because police officer discharges are uniquely governed by the grievance arbitration process set forth in the act commonly referred to as the Policemen and Firemen Collective Bargaining Act or Act 111 (Act 111),[10] then the grievance arbitrator's decision, not PPD's decision, is the final action. Requester appealed to this Court.[11] On October 20,

---

[9] The ACLU-PA filed an *amicus curiae* brief supporting Requester, reversal, and disclosure of the requested records. *See* R.R. at 86a-108a.

[10] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-217.12.

[11]     This Court's "review of a trial court's order in a[n] RTKL dispute is 'limited to determining whether findings of fact are supported by [substantial] evidence or whether the trial court committed an error of law, or an abuse of discretion in reaching its decision.'" *Butler Area Sch. Dist. v. Pennsylvanians for Union Reform*, 172 A.3d 1173, 1178 n.7 (Pa. Cmwlth. 2017) (quoting *Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1213 n.6 (Pa. Cmwlth. 2011)). "The scope of review for a question of law under the [RTKL] is plenary." *SWB Yankees LLC v. Wintermantel*, 999 A.2d 672, 674 n.2 (Pa. Cmwlth. 2010) (quoting *Stein v. Plymouth Twp.*, 994 A.2d 1179, 1181 n.4 (Pa. Cmwlth. 2010), *aff'd*, . . . 45 A.3d 1029 ([Pa.] 2012)).

*Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 178 n.8 (Pa. Cmwlth. 2019).

On November 9, 2021, this Court granted a motion to admit Gunita Singh, staff attorney for Reporters Committee for Freedom of the Press, *pro hac vice* to represent Requester in this appeal, as she did before the trial court.

2021, the trial court issued its opinion pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(a) (Rule 1925(a) Opinion).

Initially, "[t]he purpose of the RTKL is 'to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions.'" *Mun. of Mt. Lebanon v. Gillen*, 151 A.3d 722, 730 (Pa. Cmwlth. 2016) (quoting *Pa. State Educ. Ass'n v. Commonwealth*, 148 A.3d 142, 155 (Pa. 2016)). To that end,

> [p]ursuant to the RTKL, a public record must be accessible for inspection and duplication. Section 701(a) of the RTKL, 65 P.S. § 67.701(a). A record in the possession of an agency . . . is presumed to be a public record, unless the record is exempt under Section 708 of the RTKL, 65 P.S. § 67.708, protected by a privilege, or exempt from disclosure under other law or court order. *See* Section 305(a) of the RTKL, 65 P.S. § 67.305(a). The agency bears the burden to prove that a record is exempt from public access.[12] *See* Section 708(a)(1) of the RTKL.

*Sturgis v. Dep't of Corr.*, 96 A.3d 445, 446 (Pa. Cmwlth. 2014). However, "[w]hen resolving disputes regarding the disclosure of government records under the RTKL, agencies and reviewing courts must begin from a presumption of transparency." *Payne v. Pa. Dep't of Health*, 240 A.3d 221, 225 (Pa. Cmwlth. 2020). Further, "[c]onsistent with the RTKL's goal of promoting government transparency and its remedial nature, the exceptions to disclosure of public records must be narrowly

---

[12]    The "burden of proving that a record of a . . . local agency is exempt from public access shall be on the . . . local agency receiving a request by a preponderance of the evidence." Section 708[(a)(1)] of the RTKL, 65 P.S. § 67.708(a)(1) . . . . A preponderance of the evidence is such evidence as would lead a fact-finder to find that the existence of a contested fact is more probable than the nonexistence of the contested fact. *P*[*a.*] *Off*[*.*] *of Att*[*'y*] *Gen*[*.*] *v. Bumsted*, 134 A.3d 1204, 1210 n.12 (Pa. Cmwlth. 2016); *P*[*a.*] *State Troopers Ass*[*'n*] *v. Scolforo*, 18 A.3d 435, 438-[]39 (Pa. Cmwlth. 2011).

*Bagwell*, 155 A.3d at 1130 (emphasis omitted).

construed." *Off. of the Governor v. Davis*, 122 A.3d 1185, 1191 (Pa. Cmwlth. 2015) (en banc).

Relevant to the instant matter, Section 708(b) of the RTKL declares:

[T]he following are exempt from access by a requester under this [RTKL]:

. . . .

(7) . . . [R]ecords relating to an agency employee:

. . . .

(viii) Information regarding discipline, demotion or discharge contained in a personnel file. **This subparagraph shall not apply to the final action of an agency that results in demotion or discharge**.

65 P.S. § 67.708(b) (emphasis added). Therefore, under Section 708(b)(7)(viii) of the RTKL, records of "the final action of an agency that results in . . . discharge" are publicly accessible. 65 P.S. § 67.708(b)(7)(viii).

Requester argues that the clear language of Section 708(b)(7)(viii) of the RTKL mandates that PPD's 2020 officer dismissals are final actions, and PPD may not use the CBA to subvert the RTKL.[13] PPD retorts that, based on Section 708(b)(7)(viii) of the RTKL's plain meaning, a PPD dismissal is final only after the discharge is upheld through the grievance arbitration process.[14] Accordingly, the issue is whether the City's dismissal of a PPD officer pending the grievance process is a "final action of [(PPD)]," 65 P.S. § 67.708(b)(7)(viii), at the time PPD issues the dismissal notice, or after a grievance arbitrator has rendered a decision.

---

[13] Alternatively, Requester adds that the public's interest in disclosure vastly outweighs PPD's interest in denying access.

[14] In the alternative, PPD contends that, if the language of Section 708(b)(7)(viii) of the RTKL is considered ambiguous, PPD's approach properly balances privacy interests against the public's interest in full disclosure.

9

The OOR held that PPD's interpretation that the Request sought only records in which notices of dismissal were sent in 2020 and grievance procedures were concluded was unreasonably narrow. The OOR declared that "the context makes clear that the Request sought records reflecting the dismissal of officers that became final in 2020, regardless of the original date of the notice of dismissal[,]" and "[PPD] is not required to produce records related to the termination of personnel who are still involved in the grievance process . . . ."[15] *Id*. at 7.

The OOR reasoned:

> In *Nolen v. Phila*[*delphia*] *Police Dep*[*artment*], the request, filed near the end of February of 2017, sought notices of dismissal and demotion "placed in personnel folders" in 2016. [PPD] produced the notices but denied access to records related to matters that were still involved in labor disputes, holding that records were not yet "final actions" subject to the exception from the exemption. OOR Dkt. AP 2017-1039[] . . . [(July 19, 2017)]. The OOR noted the Commonwealth Court's reliance in *Silver v. Borough of Wilkinsburg*, 58 A.3d 125 (Pa. C[mwlth.] [] 2012), on Webster's Third New College Dictionary's definition of "final action" as "forming or occurring at the end . . . or constituting the last element in a series, process or procedure." *Id*. The Court in *Silver* concluded that the "final action" in that case was the act of the agency in terminating the employee's employment. *Id*. at 130. Based on this definition, the OOR held that records related

---

[15] The OOR represented that, although the responding agency may interpret the meaning of an RTKL request, the interpretation must be reasonable. *See Ramaswamy v. Lower Merion Sch. Dist.*, OOR Dkt. AP 2019-1089 (Apr. 10, 2020), at 2.

> When a request is subject to multiple interpretations, it is the OOR's task to determine if the agency's interpretation was reasonable. *Ramaswamy* . . . . The OOR determines this from the text and context of the request alone, as neither the OOR nor the requester is permitted to alter a request on appeal. *See McKelvey v. Off*[.] *of the Att*[']*y Gen.*, 172 A.2d 122, 127 (Pa. C[mwlth.] [] 2016); *Smith Butz, LLC v. Dep't of Env*[']*t Prot*[.], 142 A.3d 941, 945 (Pa. C[mwlth.] [] 2016).

OOR Final Determination at 6.

> to dismissals that were still in the grievance process did not qualify as "final actions." *See also Black v. Pa. State Police*, OOR Dkt. AP 2016-0203 . . . [(Apr. 7, 2016)] (stating that the Notice of Imposition of Arbitration Award "constitutes the final action of an agency that results in demotion or discharge" under Section 708(b)(7)(viii) of the RTKL).[16]

OOR Final Determination at 7.

On appeal, the trial court affirmed the OOR's Final Determination, but on the basis that "[p]olice departments are not typical agencies, [as] they are subject to different rules for police officer discharge[;]" in particular, Act 111's "grievance arbitration process is mandatory" for police officers. OOR Final Determination at 5. The trial court added that, while other agencies may have different processes in place, "[i]n the unique circumstances of police officers, [] reversal or modification must come about via mandatory grievance arbitration[.]" *Id.* at 6-7. The trial court reasoned:

> If an arbitrator, as part of a mandatory grievance arbitration, has the authority to reinstate a police officer who had been previously discharged by [PPD], [PPD's] action cannot be the final action.
>
> The arbitrator's decision, and not [PPD's] decision, is the "last element" in the process. *See Silver*, 58 A.3d at 127. To conclude otherwise would not only frustrate the very purpose of Act 111, but it would be inconsistent with the RTKL exemption.

Trial Ct. Rule 1925(a) Op. at 6.

In *Silver*, a newspaper appealed to this Court from a trial court order upholding the OOR's determination that granted the newspaper access to a redacted

---

[16] This Court acknowledges: "Although the issue presented here is one of first impression for this Court, [the] OOR has previously addressed the meaning of the phrase in its decisions. However, . . . [e]ven if [the] OOR's decisions were consistent, they are not binding precedent in this Court." *UnitedHealthcare of Pa., Inc. v. Pa. Dep't of Hum. Servs.*, 187 A.3d 1046, 1055 (Pa. Cmwlth. 2018).

version of a municipal employee's termination letter.[17]  The newspaper argued, *inter alia*, that because an employment termination letter is a final action resulting in discharge, the entire letter should have been produced in accordance with Section 708(b)(7)(viii) of the RTKL.  On appeal, this Court affirmed the trial court's decision, reasoning:

> The RTKL does not define "**final action**."  It is "a well-settled rule of statutory construction that when statutory provisions are not ambiguous, legislative intent should be effectuated by according the words their plain and ordinary meaning and not by disregarding their obvious meaning in search of a particular result."  *In re Condemnation of a Permanent Right-of-Way*, 873 A.2d 14, 17 (Pa. Cmwlth. 2005).  According to Webster's Third New College Dictionary 428, 12 (2008), the definition of final is "forming or occurring at the end . . . or constituting **the last element in a series**, **process**[,] **or procedure**[;]" and the definition of action is "the process of acting or doing . . . [a]n act or deed."

*Silver*, 58 A.3d  at 127 (emphasis added).  Although the *Silver* Court concluded that *a municipal agency's discharge* of an employee is the *final action* contemplated by Section 708(b)(7)(viii) of the RTKL, *Silver* did not involve a police officer subject to the mandatory Act 111 grievance arbitration process.

Section 3101.1 of the RTKL states: "If the provisions of [the RTKL] regarding access to records conflict with any other [f]ederal or [s]tate law, the provisions of [the RTKL] shall not apply."  65 P.S. § 67.3101.1.  "Act 111 gives police . . . personnel, who are not permitted to strike, the right to bargain collectively with their public employers."  *Fraternal Ord. of Police Fort Pitt Lodge No. 1 v. City of Pittsburgh*, 203 A.3d 965, 966 n.3 (Pa. 2019); *see also City of Pittsburgh v. Fraternal Ord. of Police Fort Pitt Lodge No. 1*, 111 A.3d 794 (Pa. Cmwlth. 2015).

---

[17] The municipality redacted all information contained in the letter, except the employment termination language itself, and that the employee had been given notice of the termination.  The redacted information related to previous disciplinary action.

According to Hartz, PPD officers bargained for the right to grieve their disciplinary actions and have a neutral arbitrator conduct just cause reviews when they are discharged. *See* R.R. at 19a-20a.

> The Pennsylvania Supreme Court has ruled:
>
> > [B]y casting the arbitrator into the role of resolving disputes arising under the [CBA], . . . **the parties intended for the arbitrator to have the authority to interpret the terms of the** [**CBA**], including the undefined term "just cause" and to determine whether there was just cause for discharge in [a] particular case.

*Off. of Att'y Gen. v. Council 13, Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, 844 A.2d 1217, 1224 (Pa. 2004) (emphasis added). Moreover, this Court has recognized that "the arbitration process **allows arbitrators to modify disciplinary penalties and fashion appropriate awards based on the specific facts of a given case**." *Cnty. of Allegheny v. Allegheny Cnty. Prison Emps. Indep. Union*, 244 A.3d 873, 882 (Pa. Cmwlth. 2020) (emphasis added). In addition, "there is a limited right of review [of a grievance arbitrator's decision] in the nature of narrow certiorari."[18] *Pa. State Police v. Pa. State Troopers' Ass'n*, 656 A.2d 83, 89 n.15 (Pa. 1995); *see also id*. at 85 n.3; *City of Wash. Arb.*, 259 A.2d 437 (Pa. 1969).

In light of an Act 111 grievance arbitrator's authority to reverse PPD's dismissals and direct the evidence thereof be expunged, PPD is not using the CBA to subvert the RTKL by refusing to disclose police officer dismissals before a grievance has been filed and the grievance process completed. Rather, the PPD is complying with Section 708(b)(7) of the RTKL, and exempting officer discharge

---

[18] "The narrow certiorari scope of review limits a reviewing court to questions regarding: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights." *City of Phila. v. Fraternal Ord. of Police Lodge No. 5*, 677 A.2d 1319, 1322 (Pa. Cmwlth. 1996) (quoting *Pa. State Police v. Pa. State Troopers' Ass'n*, 656 A.2d 83, 85 (Pa. 1995)). Thus, further appeal from a grievance arbitrator's award to this Court is only to review the propriety of the arbitrator's award, not whether a police department employer had just cause to discharge an officer.

information in a personnel file from public inspection until "the last element in [the Act 111] series, process[,] or procedure" has occurred. *Silver*, 58 A.3d at 127.

The CBA that governs the employment relationship provides for mandatory arbitration in which an arbitrator is authorized to determine if PPD had just cause to end the employment relationship. Because mandatory arbitration is part of PPD's employment termination process, if a PPD officer files a grievance in response to his dismissal, there is no final agency decision until a grievance arbitrator renders his/her decision. Only if the officer does not file a grievance is PPD's officer employment termination the final agency decision.

Narrowly construing the plain language of Section 708(b)(7)(viii) of the RTKL, as it must, this Court rules that PPD's officer dismissals pending review under the Act 111 grievance arbitration are not *final actions* subject to disclosure. Accordingly, the trial court properly concluded as a matter of law that PPD did not have to produce to Requester records of 2020 PPD officer dismissals that were pending the grievance arbitration process when the Request was submitted.[19]

Based on the foregoing, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[19] Because this Court agrees with the parties that Section 708(b)(7) of the RTKL is unambiguous, this Court need not address the parties' alternative public policy arguments. *See* Requester Br. at 19 ("Here, the plain text of [Section 708(b)(7) of the RTKL] is unambiguous."); *see also* PPD Br. at 17 ("The statutory language here is plain and unambiguous.").

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Samantha Melamed,   :
The Philadelphia Inquirer           :
                                           :
From a Decision of:           :
Office of Open Records     :
                                           :
Appeal of: Samantha Melamed,  :    No. 914 C.D. 2021
The Philadelphia Inquirer           :

# O R D E R

AND NOW, this 19th day of December, 2022, the Philadelphia County Common Pleas Court's July 23, 2021 order is affirmed.

_____
ANNE E. COVEY, Judge